**Rickie Dawson YORK, Appellant,**

v.

**The STATE of Texas.**

**No. PD–0088–10.**

Court of Criminal Appeals of Texas.

June 29, 2011.

Austin Reeve Jackson, Tyler, for Appellant.

Michael J. West, Asst. D.A., Tyler, Lisa C. McMinn, State's Attorney, Austin, for State.

KELLER, P.J., delivered the opinion of the Court in which MEYERS, PRICE, KEASLER, HERVEY, and ALCALA, JJ., joined.

We must resolve two issues in this case. First, did a police officer have reasonable suspicion to detain appellant, who was asleep in a car, with the lights on and the engine running, parked on a sidewalk in front of a gas station during the early morning hours? Second, does the doctrine of collateral estoppel require the suppression of evidence in a subsequent prosecution when that evidence was suppressed in an earlier prosecution arising from the same facts? The answer to the first question is relatively straightforward. But to answer the second question, we must deconstruct earlier opinions from this Court and re-analyze the question from scratch.

## I. BACKGROUND

### A. Criminal Investigation

Leland Shawn Johnson was a patrol officer for the City of Bullard, in Smith County. On his way to Tyler[1] at around 3:00

---

1. Bullard "closed down" by 10:00 p.m., and officers working late-night shifts were allowed to go to Tyler to get something to eat.

a.m. on October 16, 2007, he passed an Exxon gas station that was outside the city limits of Bullard but still in Smith County.

Officer Johnson was personally aware that this particular Exxon station had been burglarized at least once during the previous two years, and he had been advised by deputies that other burglaries had occurred there. The Exxon station was closed for the night, but a car was parked partially on the sidewalk immediately in front of the Exxon store, with the headlights shining on the store window. The headlights were shining into the business. From Officer Johnson's vantage point on the road, the car appeared to be almost touching the front door glass. The light from the headlights was being reflected back into the vehicle, and the car did not appear to be occupied. Officer Johnson parked behind the vehicle, turned his headlights off, and approached on foot.

He saw that the car's engine was running, the driver's rear window was down, and appellant was in the car asleep with the seat laid back. Officer Johnson did not smell any alcohol, nor did he see any items in the car that might have been taken in a burglary. He watched appellant for a few minutes and looked around for weapons before waking appellant up. Appellant expressed surprise upon being awakened.

Officer Johnson asked appellant for identification, and appellant said that he had left it at home. Officer Johnson then asked appellant to step outside the vehicle.

In the ensuing conversation, appellant expressed confusion regarding where he was, saying that he was in the Chapel Hill area, when he was not even close to there. Officer Johnson then asked if appellant had any weapons. Appellant said that he did not, and he gave Officer Johnson consent to search his person. The search revealed that appellant possessed marijuana and methamphetamine, and he was arrested. Appellant gave Officer Johnson a false name after the arrest.[2]

## B. First Prosecution: Failure to Identify

The criminal district attorney's office first prosecuted appellant in a county court at law for the misdemeanor offense of failure to identify.[3] The case was tried to a jury, with the sole evidence being Officer Johnson's testimony. In addition to facts outlined above, Officer Johnson testified during cross-examination about whether he had seen appellant committing certain offenses:

Q. Would you say that in those couple of minutes [of watching appellant sleeping], you were able to determine that there was not a burglary at that location going on?

A. Well, I couldn't say that there was one occurring at that time, yes.

Q. Okay. And you didn't see any kind of property or anything in the car, did you?

A. Not from standing outside, no.

---

**2.** The facts elicited in the failure to identify prosecution were different in the following respects from the testimony in this case: (1) Officer Johnson testified that the headlights were shining on the window, but he did not specifically testify that the headlights were shining "into the business." (But one of the prosecutors argued to the county-court-at-law judge: "The car was—the lights were on in-

side the store illuminating the store.") (2) Officer Johnson testified that the "rear windows" were down, not just the driver's rear window. (3) Officer Johnson did not testify about appellant's "Chapel Hill" statement. These differences are immaterial to our resolution of the issues before us.

**3.** *See* TEX. PENAL CODE § 38.02(b).

Q. Nothing that would give you reason to believe that he had burglarized that store?

A. No.

* * *

Q. Officer, at that time when you asked for consent to search and continued your investigation, Mr. York hadn't committed any type of felony offense within your view at that time, had he?

A. No, he had not.

Q. He had not committed any type of offense that would be considered a breach of the peace; is that correct?

A. No, he had not.

Q. He hadn't committed any type of public order crime, such as a riot or something to that effect?

A. No, he had not.

Q. He had not committed, in your view, an offense under Chapter 49 of the Penal Code, which is DWI, intoxication manslaughter, that type of offense. He had not committed any, correct?

A. No, he had not.

Officer Johnson also testified that a video of the incident existed, but he did not have it.

Outside the presence of the jury, the parties and the county court at law judge discussed two defense motions: a motion for directed verdict of acquittal and a motion to suppress evidence. Both motions were based on the idea that the State failed to prove that appellant's arrest or detention was lawful. The defense first raised these motions after the State's direct examination, but the judge denied the motions at that time. After defense counsel's cross-examination, the parties and the judge resumed discussion of these issues, which included remarks by the judge regarding the officer being outside of his jurisdiction. Ultimately, the judge granted the motion to suppress. Before bringing in the jury, the judge stated: "Well, the court will enter a directed verdict of acquittal, based on the fact there is no evidence to go before the jury."

After the jurors were brought back into the courtroom, the judge explained to them:

Basically, what I did was grant the defendant's motion to suppress. I'm not necessarily finding the officer did anything wrong. He was outside of his jurisdiction, stopped to investigate what was going on. I don't think there is anything wrong with that. But with him being outside his jurisdiction and him not testifying to any articulable facts as to how he thinks an offense might have been committed, I think the law requires me to grant the motion to suppress, which means y'all have no evidence in front of you.

* * *

[Addressing appellant:] This officer did exactly what he was supposed to do. You're getting away on a technicality.

Expecting the State to appeal this decision because of his other cases, the judge told defense counsel that he could draft the findings of fact and conclusions of law. No written findings of fact and conclusions of law are contained in the record before us.

## C. Second Prosecution: Possession of Methamphetamine

The criminal district attorney's office later prosecuted appellant in district court for possession of methamphetamine. The parties litigated the legality of Officer Johnson's conduct during a pretrial suppression hearing. At this hearing, the defense introduced the record of trial proceedings from the failure-to-identify prosecution. Officer Johnson also testified, and a video of the incident was played for the court. In addition to the

facts outlined previously, Officer Johnson testified that, as he approached appellant's car, he believed that there was a "[p]ossible burglary in progress." Once he found appellant asleep in the car, Officer Johnson suspected possible offenses of burglary, DWI, public intoxication, or trespass. With respect to the testimony outlined in part IB of this opinion, Officer Johnson also explained that his testimony in the failure-to-identify prosecution reflected that he did not know particular offenses had been committed but that he was conducting an investigation.

Before the district judge, defense counsel argued that Officer Johnson lacked reasonable suspicion or probable cause to detain appellant, that Officer Johnson's investigation was prohibited under Article 14.03(d)[4] because he was outside of his jurisdiction, and that suppression should be granted under the doctrines of res judicata[5] and collateral estoppel.

With respect to the Article 14.03(d) claim, defense counsel contended that Officer Johnson did not observe any of the offenses for which Article 14.03(d) allows an out-of-jurisdiction officer to perform an arrest.

With respect to the collateral-estoppel question, defense counsel first explained that the lawfulness of the arrest or detention is an element of the offense of failure to identify.[6] He further argued, based upon Fifth Circuit cases, that collateral estoppel could involve two different scenarios: (1) barring the prosecution itself or (2) barring the relitigation of evidentiary facts.[7] Defense counsel contended that appellant's case fell within the second scenario. He contended that *Murphy v. State*,[8] upon which the prosecutors heavily relied, involved only the first scenario.

Throughout the hearing, defense counsel referred to the fact that jeopardy had attached in the first prosecution when the suppression issue was decided. He also contended that the State had a full and fair opportunity to litigate the issue because (1) the State could have put into evidence, in the first prosecution, the additional evidence that was presented in the second prosecution, and (2) the State could have appealed the trial court's ruling in the first prosecution.

Finding that Officer Johnson had adequate justification to conduct an investigative detention, and relying upon *Murphy* to dispose of appellant's collateral-estoppel argument, the district judge denied the motion to suppress. Appellant pled guilty, and he pled true to two prior enhancement allegations. Punishment was tried to the jury, and the jury sentenced him to sixty years in prison.

### D. Appeal

Appellant raised his suppression issues on appeal.[9] With respect to the collateral-

4. Tex.Code Crim. Proc. art. 14.03(d).

5. Appellant's *"res judicata"* claim was not really distinct from his collateral-estoppel claim, and we need not make any further reference to it.

6. *See* Tex. Penal Code § 38.02(b) ("A person commits an offense if he intentionally gives a false or fictitious name ... to a peace officer who has (1) lawfully arrested the person [or] (2) lawfully detained the person.").

7. Defense counsel relied upon *Wingate v. Wainwright*, 464 F.2d 209 (5th Cir.1972); *Blackburn v. Cross*, 510 F.2d 1014 (5th Cir. 1975); *United States v. Nelson*, 599 F.2d 714 (5th Cir.1979); and *United States v. Lee*, 622 F.2d 787 (5th Cir.1980).

8. 239 S.W.3d 791 (Tex.Crim.App.2007).

9. Other portions of our opinion reflect the content of the reasonable suspicion/Article 14.03 complaint made before the court of appeals.

estoppel contention, he argued that the trial court in the failure-to-identify prosecution found two facts that should have been given preclusive effect in the methamphetamine prosecution: (1) that the officer was outside his jurisdiction, and (2) that none of the exceptions in Article 14.03 applied. Appellant claimed that *Murphy* could be distinguished on the basis that it "centered on the legal conclusion of a lack of probable cause" while appellant's case turns upon prior factual determinations made by the trial court in the failure-to-identify prosecution.

The court of appeals observed that Article 14.03(d) allows an outside-of-jurisdiction officer to detain a person for an offense committed in the officer's presence if the offense is a felony or a violation of Chapter 42 of the Penal Code.[10] The court concluded that Officer Johnson had reasonable suspicion to believe that appellant was committing a burglary.[11] The court also concluded that appellant parked his vehicle on a sidewalk in violation of Penal Code § 42.03.[12]

Relying upon our decision in *Murphy*, the court of appeals held that collateral estoppel applies only to a previously litigated fact that constitutes an essential element of the offense in the second prosecution.[13] Consequently, the court concluded that principles of collateral estoppel did not preclude the State from proving the legality of appellant's detention and arrest

because that issue did not constitute an element of the offense of possession of methamphetamine.[14]

## II. ANALYSIS

### A. Legality of Officer Johnson's Conduct

#### 1. *Appellant's Contentions*

In his first ground for review, appellant complains that Officer Johnson's discovery of the methamphetamine was the product of an illegal detention. Appellant argues that a detention was created by Officer Johnson's act of blocking in appellant's car, his request that appellant exit the vehicle, and appellant's compliance with that request. Appellant further argues that Officer Johnson was outside of his jurisdiction, and as a result, his authority to detain depended upon reasonable suspicion to believe that an offense had been committed in his presence.[15] Appellant contends that Officer Johnson did not have reasonable suspicion to believe that he had observed appellant committing burglary, DWI, public intoxication, obstruction of a sidewalk, or criminal trespass.

#### 2. *Article 14.03*

We will assume without deciding that appellant is correct that an investigative detention began when he complied with the officer's request to exit his vehicle.[16] And we will assume, without decid-

---

**10.** *York v. State*, No. 12–08–00106–CR, slip op. at 6, 2009 WL 4829996 (Tex.App.-Tyler December 16, 2009) (not designated for publication).

**11.** *Id.* at 5–6.

**12.** *Id.* at 6; *see* TEX. PENAL CODE § 42.03(a)(1) ("A person commits an offense if, without legal privilege or authority, he intentionally, knowingly or recklessly ... obstructs a ... sidewalk").

**13.** *York*, No. 12–08–00106–CR, slip op. at 7 (citing *Murphy*, 239 S.W.3d at 795).

**14.** *Id.*

**15.** Appellant also contends that Officer Johnson lacked reasonable suspicion under Fourth Amendment standards, but as will become clear later, we need not address this contention.

**16.** In *State v. Garcia–Cantu*, we determined that the trial court's finding that a detention

ing, that the term "arrest" in the relevant provisions of Article 14.03 includes investigative detentions.[17]

As a city police officer, Officer Johnson was a peace officer as defined by Article 2.12(3).[18] The controlling provision with respect to that type of peace officer is Article 14.03(g)(2), which provides:

A peace officer listed in Subdivision (3), Article 2.12, who is licensed under Chapter 1701, Occupations Code, and is outside of the officer's jurisdiction may arrest without a warrant a person who commits any offense within the officer's presence or view, except that an officer described in this subdivision who is outside of that officer's jurisdiction may

arrest a person for a violation of Subtitle C, Title 7, Transportation Code, only if the offense is committed in the county or counties in which the municipality employing the peace officer is located.[19]

Officer Johnson had state-wide authority to arrest for any non-traffic offense committed within his presence or view. Moreover, within Smith County—where the City of Bullard is located—Officer Johnson's authority to arrest for offenses committed within his presence or view extended to traffic offenses as well.[20] Consequently, because the Exxon station was located in Smith County, Officer Johnson had the authority to arrest (and thus conduct an investigative detention) for *any* offense committed within his presence or

had occurred was supported by the convergence of a number of factors, including: the "boxing in" of the defendant's vehicle, the use of a spotlight, the early morning hour in which the conduct occurred, the use of an authoritative tone of voice, shining a flashlight across the defendant's eyes, and asking for identification. 253 S.W.3d 236, 247–48, 250 (Tex.Crim.App.2008). No spotlight was used in the present case, and the district court was free to determine that the officer's voice was not authoritative.

Of course, the defendant in *Garcia–Cantu* was also awake, which was not true in the present case when Officer Johnson first approached the car. In *G.M. v. State*, the Supreme Court of Florida held that a person is not seized if he is unaware of the police conduct that would constitute an assertion of authority. 19 So.3d 973, 983 (Fla.2009). In that case, the defendant had not observed that a police car's flashing lights had been activated and became aware of police presence only after an officer identified himself and ordered the defendant to spit out the marijuana. *Id.* In arriving at its conclusion, the court cited "rare" and unpublished decisions from other courts that found no seizure when the defendant was unconscious or asleep, including one decision finding no seizure when the police blocked in a defendant's car. *Id.* at 982 n. 6. This holding seems consistent with Supreme Court caselaw that the occurrence of a detention depends upon a suspect's reason-

able perception of restraint and submission to a show of authority. *See Brendlin v. California*, 551 U.S. 249, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007) ("[T]here is no seizure without actual submission" and the test is whether "a reasonable person would have believed that he was not free to leave" or whether "a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter.").

17. By its terms, Article 14.03 applies to "arrests," but with respect to a different part of the statute, we have held that "arrest" includes "detention." *State v. Kurtz*, 152 S.W.3d 72, 79–80 (Tex.Crim.App.2004).

18. Tex.Code Crim. Proc. art. 2.12(3) (peace officers include "police officers of an incorporated city, town, or village").

19. *Id.*, art.14.03(g)(2).

20. At the time we decided *Kurtz*, a city police officer did not have the authority to arrest for a traffic offense committed in his presence or view but outside of his jurisdiction. *See Kurtz*, 152 S.W.3d at 79–80 (quoting from then existing version of Article 14.03(g)). Authority to arrest within the city police officer's county was added by amendment in 2005. Acts 2005, 79th Leg., Ch. 1015, § 1, eff. Sept. 1, 2005.

view.[21] The question, then, is whether Officer Johnson had the requisite level of suspicion that such an offense was being or had been committed.

 Investigative detentions are generally governed by the reasonable suspicion standard.[22] Under the Fourth Amendment, "reasonable suspicion" exists when an officer is aware of "specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged or is (or soon will be) engaging in criminal activity."[23] This standard is objective; the subjective intent of the officer conducting the detention is irrelevant.[24] In addition, reasonable suspicion does not depend on the "most likely explanation" for a suspect's conduct, and reasonable suspicion can exist even if the conduct is "as consistent with innocent activity as with criminal activity."[25] The standard is logically the same in an article 14.03(g) context, except that the officer's reasonable suspicion must be limited to whether the suspect is committing, or had committed, an offense in the officer's presence or view.[26]

### 3. Public Intoxication

 A person commits the offense of public intoxication if he "appears in a public place while intoxicated to the degree that the person may endanger the person or another."[27] "Public place" means "any place to which the public or a substantial group of the public has access and includes, but is not limited to, streets, high-

21. Appellant did not have a driver's license in his possession and his vehicle was parked on a sidewalk, but it is not clear that either of these facts constituted a crime committed in Officer Johnson's presence. An operator of a motor vehicle must have a driver's license in his possession while operating a motor vehicle on a *highway.* See Tex. Transp. Code §§ 521.021 & 521.025(a)(1). An operator of a motor vehicle may not stop, stand, or park the vehicle on a "sidewalk," *Id.,* § 545.302(a)(2), but a "sidewalk" is defined in part for this purpose as "the portion of a street that is . . . between a curb or lateral line of a roadway and the adjacent property line." *Id.,* § 541.302(16). Because we do not address the Court of Appeals's reliance upon the obstructing-a-sidewalk provision found in Penal Code § 42.03, we need not determine whether "sidewalk" in that statute has a meaning different from the definition found in the Transportation Code.

22. *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989); *Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Crain v. State,* 315 S.W.3d 43, 52 (Tex.Crim.App.2010).

23. *Garcia v. State,* 43 S.W.3d 527, 530 (Tex. Crim.App.2001); *see also Crain,* 315 S.W.3d at 52.

24. *Garcia,* 43 S.W.3d at 530.

25. *Curtis v. State,* 238 S.W.3d 376, 378–79 (Tex.Crim.App.2007); *see also Woods v. State,* 956 S.W.2d 33, 38–39 (Tex.Crim.App.1997).

26. *See Stull v. State,* 772 S.W.2d 449, 452 (Tex.Crim.App.1989) (this Court has upheld arrests under Article 14.01, which required commission of offense in an officer's presence, "when the police officers personally observed behavior that although not overtly criminal, was, when coupled with the officers' prior knowledge, sufficient to establish probable cause that an offense was then occurring"); *Lunde v. State,* 736 S.W.2d 665, 666–67 (Tex.Crim.App.1987) (observing this Court's past rejection of sufficiency-of-the-evidence standard for determining when offense is committed in presence under Article 14.01—instead employing probable cause standard traditionally associated with arrests); *Delgado v. State,* 718 S.W.2d 718, 720–21 (Tex.Crim.App.1986) (commission of crime within presence requirement of Article 14.01 satisfied when officer had probable cause to believe crime was being committed in his presence but it was later determined that officer was incorrect); *see also McGee v. State,* 105 S.W.3d 609, 614 (Tex.Crim.App.2003) (following *Stull* and *Lunde* ).

27. Tex. Penal Code § 49.02(a).

ways, and the common areas of schools, hospitals, apartment houses, office buildings, transport facilities, and shops." [28] A gas station is a shop, and it and the area around it are places to which the public has access.[29] We hold that the parking and sidewalk area outside the Exxon station was a public place.

The next question is whether Officer Johnson had reasonable suspicion to believe that appellant was intoxicated to the degree that he might endanger himself or another. Before appellant was awakened, Officer Johnson knew that: (1) it was around 3:00 a.m., (2) appellant was asleep in his car, (3) the car's engine was running, (4) the car was parked partially on the sidewalk very near the door to the store, and (5) the headlights were on.

The circumstances in the present case were sufficient to give rise to a reasonable suspicion that would permit an investigative detention. From the circumstances present here, Officer Johnson could reasonably suspect that appellant was intoxicated. And with the engine running, an intoxicated driver might have awakened, and in his stupor, driven into the store. Or he might have returned to the road, where he would pose a threat to others who were traveling.[30] It would be reasonable to suspect that appellant posed a danger to himself or others.[31]

Although Officer Johnson did not smell alcohol as he approached the car, that fact did not cause reasonable suspicion to dissipate, in part because appellant could still have been intoxicated by drugs.[32] Nothing

**28.** *Id.,* 1.07(40).

**29.** One court of appeals has held specifically that the parking lot of a convenience store is a public place. *Gonzalez v. State,* 664 S.W.2d 797 (Tex.App.-Corpus Christi 1984), *rev'd* on other grounds in unpublished disposition, *aff'ing* as modified on remand, 683 S.W.2d 791 (Tex.App.-Corpus Christi 1984).

**30.** Being asleep with the engine running has been held to be an indication that a person had operated his car earlier. *See Denton v. State,* 911 S.W.2d 388, 389–90 (Tex.Crim.App. 1995) (a person "operates" a motor vehicle for purposes of DWI when he takes "action to affect the functioning of his vehicle in a manner that would enable the vehicle's use," such as starting the ignition and revving the accelerator).

**31.** Appellant cites several cases as buttressing his contention that Officer Johnson did not have reasonable suspicion to believe that appellant was committing the offense of DWI or public intoxication. Only one of those cases—*State v. Griffey,* 241 S.W.3d 700 (Tex. App.-Austin 2007, pet. ref'd)—involves a sleeping suspect. In *Griffey,* a manager at a Whataburger restaurant called the police at around 3:00 a.m. to report a person "passed out behind the wheel in the drivethrough."

*Id.* at 702. Police found the suspect awake in her car, which was next to the drivethrough window. *Id.* The trial court suppressed evidence from the stop, *id.* at 703, and the court of appeals affirmed. *Id.* at 707. The court of appeals found that the officer lacked reasonable suspicion because the citizen-informant tip was not corroborated, and was actually contradicted by the fact that the suspect was awake when the officer arrived. *Id.*

As a lower appellate court decision, *Griffey* is not binding on us. In any event, *Griffey* is distinguishable because it dealt with the reliability of the information that the suspect was asleep. In the present case, Officer Johnson personally observed the suspect sleeping.

The Supreme Court of Colorado has stated, "Reasonable suspicion to make a stop for the crime of driving under the influence may arise when a police officer sees a person asleep behind the wheel of a car with its engine running." *People v. Brown,* 217 P.3d 1252, 1256 (Colo.2009). The Supreme Court of Louisiana has held those facts, combined with the early morning hour and the presence of the vehicle in the French Quarter of New Orleans, to be sufficient reasonable suspicion to make an investigatory stop. *State v. Keller,* 403 So.2d 693, 696 (La.1981).

**32.** *See* Tex. Penal Code § 49.01(2)(A). (The definition of "intoxicated" includes "not hav-

else occurred that would have negated reasonable suspicion before Officer Johnson found the drugs on appellant's person. To the contrary, the fact that appellant did not have his driver's license with him and was confused about his location served to reinforce a reasonable suspicion of intoxication.

### 4. *Burglary*

■ Even before he parked behind appellant's car, there was reasonable suspicion to believe that a burglary was occurring. Officer Johnson knew that the Exxon station was closed, that the station had been burglarized before, that it was about 3:00 a.m., that the headlights of appellant's car were shining into the store, and that appellant was parked too close to the store door (on the sidewalk). These facts were sufficient for Officer Johnson to reasonably suspect that a burglary might be occurring and to justify an investigation. When the officer approached the car on foot, he learned that the engine was running, which would be consistent with it being a getaway car.

Appellant contends that, even if Officer Johnson initially had reasonable suspicion to investigate a possible burglary, that suspicion was later dispelled, and once the suspicion was dispelled, he should have ended the detention. But even if appellant's sleeping and subsequent events had dispelled any reasonable suspicion that appellant was participating in a burglary, by that time there was reasonable suspicion that he was guilty of public intoxication, as discussed above. We overrule appellant's first ground for review.

### B. Collateral Estoppel[33]

#### 1. *Murphy*

The courts below relied upon our opinion in *Murphy* to resolve appellant's collateral-estoppel claim. For reasons that will become apparent, we shall examine the line of cases that led up to our opinion in *Murphy* and reexamine our holding in that case.

*Murphy* was stopped for speeding, and the stop resulted in the discovery of drugs and drug paraphernalia.[34] Murphy was first prosecuted in a justice-of-the-peace court for possession of drug paraphernalia.[35] He was acquitted during a bench trial at which the State failed to produce evidence of speeding, and as a result, failed to establish the validity of the stop.[36] He was later prosecuted in district court for possession of a controlled substance.[37] Alleging collateral estoppel, Murphy filed a motion to suppress and a motion to dismiss the indictment.[38] These motions were denied, and he was ultimately convicted.[39] We characterized Murphy's claim before the court of appeals as being whether the

---

ing the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body.")

33. Appellant specifically relies upon the doctrine of collateral estoppel as articulated in *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), which construed the doctrine as it was incorporated within the Double Jeopardy Clause of the Fifth Amendment. Any argument based upon a notion of

collateral estoppel outside the double-jeopardy context is outside the scope of this opinion.

34. *Murphy*, 239 S.W.3d at 792.

35. *Id.* at 793.

36. *Id.*

37. *Id.*

38. *Id.*

39. *Id.*

legality of the detention was litigated in the justice court.[40]

In *Murphy*, we held that the collateral-estoppel inquiry involved a two-part analysis: (1) determining exactly what facts were necessarily decided in the first proceeding, and (2) determining whether those necessarily decided facts constitute essential elements of the offense in the second trial.[41] We said that this analysis applied "[t]o determine whether collateral estoppel bars a subsequent prosecution or permits the prosecution but bars relitigation of certain specific facts." [42]

To support this proposition, we cited to our earlier decision in *Ex parte Taylor* and to the Fifth Circuit case of *Neal v. Cain.*[43] We also provided a *"see also"* citation to *United States v. Larkin.*[44] Relying upon *Neaves v. State,*[45] the concurring opinion in *Murphy* explained that probable cause to stop the defendant was not the same issue as guilt of possessing the controlled substance.[46]

At various stages of the proceedings, appellant has articulated three bases for distinguishing this case from *Murphy:* (1) the present case involves specific fact findings, while *Murphy* involved only legal conclusions, (2) the validity of the police officer's conduct was an element of the offense in appellant's earlier prosecution, but that was not true of the defendant in *Murphy*, and (3) appellant claims merely that certain evidentiary facts cannot be relitigated, while *Murphy* dealt with whether the earlier acquittal necessarily barred the entire prosecution in the subsequent case.

We need not address appellant's first articulated basis for distinguishing *Murphy*—that the present case involves factual rather than legal issues. We will assume, without deciding, that appellant has satisfied any requirement that the prior prosecution resolved a question of fact, and we otherwise decline to address the matter.[47]

40. *Id.* at 794.

41. *Id.* at 795.

42. *Id.*

43. *Id.* at 795 (citing *Ex parte Taylor*, 101 S.W.3d 434 (Tex.Crim.App.2002) and *Neal v. Cain*, 141 F.3d 207 (5th Cir.1998)).

44. *Id.* at 796 (citing *United States v. Larkin*, 605 F.2d 1360, 1361 (5th Cir.1979)).

45. 767 S.W.2d 784 (Tex.Crim.App.1989).

46. *Murphy*, 239 S.W.3d at 797 (Meyers, J., concurring).

47. In her concurring opinion, Judge Cochran concludes that the issues resolved in appellant's favor in the first prosecution were legal issues and that legal issues are not subject to collateral estoppel. But the court of appeals did not resolve appellant's claim on this basis; it relied solely on *Murphy*.

Also, whether Judge Cochran's basis for resolving this case is correct can be questioned on two levels. First, it is arguable that the trial court in the first prosecution did make a relevant factual finding when it characterized the officer as "not testifying to any articulable facts as to how he thinks the offense might have been committed." Second, there may be a question about whether an issue of law can be the subject of collateral estoppel. *See Bobby v. Bies*, —— U.S. ——, 129 S.Ct. 2145, 2152, 173 L.Ed.2d 1173 (2009) (Double Jeopardy case in which the Supreme Court defined collateral estoppel in this way: "Issue preclusion bars successive litigation of 'an issue of fact or law' that 'is actually litigated and determined by a valid and final judgment, and . . . is essential to the judgment.'") (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 27 (1980) (ellipsis in *Bies*)); RESTATEMENT (SECOND) OF JUDGMENTS §§ 27(referring to issue preclusion as applying to "an issue of fact or law"), 28(2) (listing exceptions to the preclusive effect of a prior determination of an issue of law). *See also* Womack, J., concurring, *post*, at 553 (stating that issue preclusion can prohibit a party from relitigating an issue "such as a fact, a question of law, or an application of law to fact").

The second basis presents a real difference between the present case and *Murphy*. The validity of Murphy's detention was not an element of the offense in his first prosecution. But the validity of appellant's detention was an element of the offense in appellant's first prosecution.[48]

Under the analysis articulated in *Murphy*, all that matters is an issue's status in the *subsequent* prosecution. The fact that an issue may have been an "essential element" in the earlier prosecution does not appear to be relevant. Nevertheless, the *Murphy* court was not presented with a situation in which an issue was an essential element in the earlier prosecution; whether the *Murphy* analysis governs such a case depends upon the rationale underlying *Murphy*'s holding.

That observation leads us to the third proposed basis for distinguishing *Murphy*: that *Murphy* dealt only with a claim that the entire second prosecution was barred. Appellant does not claim that collateral estoppel bars the subsequent prosecution in his case; his claim is only that collateral estoppel resolves certain evidentiary facts in his favor and thereby requires the granting of his motion to suppress.[49]

It is understandable that appellant would think that *Murphy* dealt with a bar to prosecution rather than a bar to the relitigation of certain facts. Murphy had filed both a motion to dismiss and a motion to suppress, and our opinion did not specifically focus on which of those motions we were concerned with.[50] A review of the court of appeals's opinion in *Murphy* makes it clear, however, that the defendant was basing his appeal solely on the motion to suppress.[51] *Murphy* concerned the relitigation of certain facts.

But appellant's misperception is also understandable because the Fifth Circuit case relied upon in *Murphy* deals with a bar to prosecution rather than a bar to relitigation of certain issues. In *Neal*, the Fifth Circuit said, "In determining whether collateral estoppel *bars a subsequent prosecution,* as Neal contends it does here, we engage in a two-step analysis," with the second step being to determine whether the issues in question constitute essential elements of the offense in the second trial.[52] So *Neal* stood only for the proposition that an issue must involve an essential element in the second prosecution in order for that issue to be used as a basis for barring prosecution altogether.[53] *Neal* did not address what requirements apply when a defendant claims only that the State may not relitigate certain underlying facts. We must look elsewhere to decide whether the essential-element-in-the-subsequent-prose-

We express no opinion on the question Judge Cochran's concurrence raises.

**48.** *See* TEX. PENAL CODE § 38.02(b)(1), (2).

**49.** The practical effect of granting the motion to suppress may be to derail appellant's prosecution, but that is not the same as barring the prosecution from the outset.

**50.** *See Murphy,* 239 S.W.3d at 793–94.

**51.** *Murphy v. State,* 200 S.W.3d 753, 757 (Tex. App.-Texarkana 2006).

**52.** 141 F.3d at 210 (emphasis added). For the two-step analysis, *Neal* cited *United States v. Brackett,* 113 F.3d 1396 (5th Cir.1997), but,

as will be discussed later, *Brackett* avoided the issue of whether the analysis applied when the defendant seeks only to bar the proof of certain facts. *See Brackett,* 113 F.3d at 1401 n. 9.

**53.** *See Simon v. Commonwealth,* 220 Va. 412, 416, 258 S.E.2d 567, 570 (1979) ("Courts are in general agreement that in order to *bar a subsequent prosecution* for a different offense arising out of the same transaction, a necessary element of the offense in the second trial must have been clearly adjudicated in the earlier proceedings.") (emphasis in original).

cution requirement applies when the defendant seeks only to bar the proof of certain facts.

Appellant's attempted distinction also conflicts with *Murphy*'s own pronouncement that its analysis applies to determine whether collateral estoppel "bars a subsequent prosecution *or permits the prosecution but bars relitigation of certain specific facts.*"[54]

As explained above, *Murphy* relied on *Taylor* for this proposition. *Taylor* did say that the essential-element-in-the-subsequent-prosecution requirement applies to a claim that collateral estoppel "bars the relitigation of certain facts."[55] But this language was itself *dicta*, because *Taylor* involved a claim that the prosecution was entirely barred.[56] The *Taylor* court relied upon *Neal* and *Dedrick v. State*[57] as authority for the proposition.[58] And *Dedrick* quoted from *United States v. Mock*.[59] None

of these cases support the *dicta* in *Taylor*.[60]

*Neal* has already been discussed. *Dedrick*'s quotation from *Mock* is actually contrary to *Taylor*'s *dicta*. We quoted *Mock* as saying that facts established in the first prosecution may not be relitigated in a second prosecution "either as ultimate or as evidentiary facts."[61] In support of this statement, *Mock* cited the Fifth Circuit decisions in *Wingate* and *Blackburn*,[62] two cases that were relied upon by defense counsel at trial in the present case.[63]

In *Wingate*, the State introduced extraneous offenses of which the defendant had previously been acquitted.[64] The court construed the collateral-estoppel protection articulated in *Ashe*, in which the Supreme Court described collateral estoppel as the rule that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit."[65] The *Wingate* court

54. *See Murphy*, 239 S.W.3d at 795 (emphasis added).

55. *Taylor*, 101 S.W.3d at 440.

56. *Id.* at 439, 442–43 (Intoxication was an element of the offenses in both the first and second prosecutions. Acquittal in the first prosecution created a collateral estoppel bar to the second.).

57. 623 S.W.2d 332 (Tex.Crim.App.1981).

58. *Taylor*, 101 S.W.3d at 440 n. 17.

59. 623 S.W.2d at 336 (quoting *United States v. Mock*, 604 F.2d 341 (5th Cir.1979)).

60. *Taylor*'s dicta would be consistent with these cases if the phrase "permits prosecution but bars the relitigation of certain facts" were construed only to describe situations in which an offense contains alternate elements, *see e.g., Kitchens v. State*, 823 S.W.2d 256, 258 (Tex.Cr.App.1991) (capital murder by murder in the course of robbery or aggravated sexual assault), and the previously litigated fact involves one or more, but not all, of the alter-

nate elements. As narrowly construed, *Taylor* would simply be saying that the essential-element-in-the-subsequent-prosecution requirement applies when the defendant is claiming to bar proof of an element of the offense, whether that element is a sole element (ending prosecution) or an alternate element (narrowing the State's theories of liability). But *Murphy* did not have such a narrow understanding of *Taylor*'s *dicta*, and as will be seen below, the Fifth Circuit decisions that addressed the issue of barring the relitigation of certain facts took a broad view about what kinds of facts were being discussed.

61. *Dedrick*, 623 S.W.2d at 336 (emphasis added) (quoting *Mock*, 604 F.2d at 343).

62. *See Dedrick*, 623 S.W.2d at 336 (quoting *Mock*, 604 F.2d at 343).

63. *See* this opinion, footnote 7.

64. *Wingate*, 464 F.2d at 210.

65. *See Id.* at 212 (quoting *Ashe*, 397 U.S. at 443, 90 S.Ct. 1189).

stated that it did not perceive any meaningful difference, for double-jeopardy purposes, between prohibiting relitigation of an issue that "is one of 'ultimate' fact or merely an 'evidentiary' fact in the second prosecution."[66] The Fifth Circuit held that, although the prosecution itself was not barred, because no part of the charged offense had been previously litigated, the State was barred from introducing evidence of the extraneous offenses for which the defendant had been acquitted.[67] In *Blackburn*, the Fifth Circuit explained that, in *Wingate*, "this Circuit significantly expanded the *Ashe* holding."[68] After *Wingate*, the court said, "there is no difference between relitigating an ultimate fact or an evidentiary fact; relitigation of either is prohibited."[69]

Finally, with respect to *Murphy*'s reliance upon *Larkin* for the proposition that "[w]hile there is no bright-line or black-letter law that can resolve the issue of when collateral estoppel applies, collateral estoppel is inapplicable in this case,"[70] an examination of *Larkin* reveals that it supports only the first half of this statement. The *Larkin* court referred to "arcane principles of double jeopardy and collateral estoppel" that are "not susceptible of bright-letter law or black-letter law,"[71] but the case did not involve the situation confronted in *Murphy* or that we confront today.[72]

*Neaves* provides no real support for the holding in *Murphy* either. In *Neaves*, the defendant obtained a negative finding in an administrative license-suspension hearing "upon the question whether probable cause existed that [the defendant] had been driving while intoxicated."[73] In his subsequent DWI prosecution, the defendant contended that the finding in the license-suspension proceeding "estopped the State from attempting to establish in the instant trial that [the defendant] had been driving while intoxicated."[74] We pointed out that the parties assumed that the ultimate facts in the two proceedings were the same: that probable cause to believe DWI had been committed (the ultimate fact in the license-suspension hearing) was the same ultimate fact as the actual commission of DWI (the ultimate fact in the criminal trial).[75] We held that this assumption was incorrect.[76] Because the defendant argued that the State was barred completely from proving the commission of DWI, this Court never had occasion to address whether the prior finding in the administrative license-suspension hearing could have been used to bar relitigation of issues raised in a motion to suppress.[77]

---

66. 464 F.2d at 213.

67. *Id.* at 214.

68. 510 F.2d at 1017.

69. *Id.*

70. *Murphy*, 239 S.W.3d at 795.

71. 605 F.2d at 1361.

72. *Id., passim.*

73. 767 S.W.2d at 785.

74. *Id.*

75. *Id.* at 786.

76. *Id.* at 786–87.

77. A decade after *Neaves*, we decided that a finding in an administrative license-suspension hearing does not even "implicate the rule of collateral estoppel as embodied in the Fifth Amendment guarantee against double jeopardy" because neither the successive-prosecution nor the multiple-punishment aspects of double jeopardy are at issue. *Reynolds v.*

Furthermore, since our holding in *Murphy*, the Supreme Court has cited § 27 of the Restatement (Second) of Judgments in two recent double-jeopardy/collateral-estoppel cases.[78] As we will explain in more detail later, comment j of that portion of the Restatement challenges the notion that collateral estoppel involves only the ultimate issues in a case.[79] For these various reasons, we will reexamine the question of when collateral estoppel bars relitigation of certain facts in a subsequent prosecution.[80]

### 3. Ultimate Issue in the First Prosecution?

 As we have already noted, the validity of a detention or arrest was an element of the failure-to-identify offense with which appellant was previously

charged.[81] As an element, it must be proven beyond a reasonable doubt.[82] In a motion to suppress setting, however, the propriety of an arrest or detention need not be proven beyond a reasonable doubt.[83] We do not often say what standard applies in a motion-to-suppress setting, and we are unaware of any cases explicitly stating the State's standard of proof in establishing reasonable suspicion,[84] but we conclude that the appropriate standard is the one that applies to most[85] constitutional suppression issues: preponderance of the evidence.[86]

 In *Dowling v. United States*, the Supreme Court explained that collateral estoppel does not bar relitigation of an issue resolved by a prior acquittal when, in the subsequent proceeding, the issue is

*State,* 4 S.W.3d 13, 18–20 (Tex.Crim.App. 1999).

78. *Bies,* 129 S.Ct. at 2152; *Yeager v. United States,* —— U.S. ——, 129 S.Ct. 2360, 2367 n. 4, 174 L.Ed.2d 78 (2009).

79. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 27 cmt. j (1982).

80. Judge Womack's concurrence contends that *Murphy* and *Taylor* read *Neal v. Cain* too broadly. Womack, J., concurring, *post,* at 555–57. We agree, which is one reason we have chosen to re-examine the matter.

81. TEX. PENAL CODE § 38.02(b).

82. TEX. PENAL CODE § 2.01 ("All persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt.").

83. *See Lalande v. State,* 676 S.W.2d 115, 117–18, 117 n. 4 (Tex.Crim.App.1984) (State is not required to prove propriety of a search beyond a reasonable doubt in a motion to suppress hearing.); *see also Castro v. State,* 227 S.W.3d 737, 741 (Tex.Crim.App.2007) (recognizing that "the burden is on the State to show that the officer had reasonable suspi-

cion" but not specifying the nature of that burden).

84. *See e.g., Castro,* 227 S.W.3d at 741.

85. In at least one instance—the voluntariness of consent—the burden of proof is "clear and convincing evidence." *State v. Ibarra,* 953 S.W.2d 242 (Tex.Crim.App.1997); *Lalande,* 676 S.W.2d at 117 n. 4.

86. *See Lego v. Twomey,* 404 U.S. 477, 488–89, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972) (In a case involving the voluntariness of a confession, the Court stated that preponderance of the evidence is the standard employed by federal courts "in Fourth and Fifth Amendment suppression hearings."); *Griffin v. State,* 765 S.W.2d 422, 429–30 (Tex.Crim.App.1989) (citing *Lego* in adopting preponderance of the evidence standard in determining the voluntariness of a confession). The use of a preponderance of the evidence standard at trial to determine the existence of "reasonable suspicion" should not be confused with the "reasonable suspicion" standard that itself governs the police officer's conduct in the field. Reasonable suspicion that a crime is, has been, or soon will be committed is a standard far short of preponderance of the evidence. *Baldwin v. State,* 278 S.W.3d 367, 371 (Tex. Crim.App.2009) ("reasonable suspicion" is

governed by a lower standard of proof.[87] This holding defeats any attempt in the present case to use the detention issue's elemental status in the first prosecution as a basis for collateral estoppel. The State's failure to prove the validity of appellant's arrest or detention beyond a reasonable doubt (as an element of the failure-to-identify offense) does not result in a collateral-estoppel bar to determining the validity of that arrest or detention by a preponderance of the evidence in a subsequent suppression hearing.[88] To prevail on his collateral-estoppel claim, then, appellant must rely upon the detention issue's status in the earlier prosecution as a suppression issue, governed by the preponderance of the evidence standard.

Complicating such reliance is the fact that the court in the failure-to-identify prosecution erred in addressing the detention issue as a suppression issue. In *Woods v. State*, we held that, when the validity of an arrest or detention is an element of the charged offense, litigating the validity of the seizure as a suppression issue is inappropriate.[89] Instead, the issue should simply be litigated as part of the State's case at trial.[90]

And *Woods* is not satisfied by litigating the validity of a seizure during the trial, if it is still litigated *as a suppression issue*. The trial judge's role with respect to elements of the offense and suppression issues differs significantly when the trial judge is not the finder of fact on the question of guilt. With respect to suppression issues, the trial judge is always the "sole trier of fact and judge of the credibility of the witnesses and the weight to be given to their testimony."[91] And with respect to such issues, he can draw rational inferences in favor of either party.[92] By contrast, when the trial judge is not the finder of fact on the question of guilt, he can direct a verdict in the defendant's favor only if "after viewing the evidence in the light most favorable to the prosecution," he cannot conclude that "*any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.*"[93]

Appellant's trial in the failure-to-identify case was to a jury. Even if we assume that the trial judge in that case believed all

less than "probable cause," which in turn is far short of preponderance of the evidence).

**87.** 493 U.S. 342, 348–49, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990).

**88.** Had the issue of guilt in the controlled-substance trial been contested and submitted to the jury, and had the jury been given an instruction on the suppression issue under article 38.23, the State's burden before the jury would have been "beyond a reasonable doubt." *See* Tex. Code Crim. Proc. art. 38.23(a) ("the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this article...."). Even with a contested jury trial on guilt, however, appellant would still have been required to show "a genuine dispute about a material fact" before he would be entitled to an instruction. *See id.* ("In any case where the legal evidence raises

an issue hereunder....."); *Oursbourn v. State,* 259 S.W.3d 159, 177 (Tex.Crim.App.2008).

**89.** 153 S.W.3d 413, 415 (Tex.Crim.App.2005) (construing Tex. Penal Code § 38.04).

**90.** *Id.*

**91.** *Wiede v. State,* 214 S.W.3d 17, 24–25 (Tex. Crim.App.2007).

**92.** *Roy v. State,* 90 S.W.3d 720, 723 (Tex. Crim.App.2002) ("An appellate court reviewing a trial court's ruling on a motion to suppress must view the record evidence and all reasonable inferences therefrom in the light most favorable to the trial court's ruling.").

**93.** *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original) (sufficiency of the evidence standard); *McDuff v. State,* 939 S.W.2d 607, 613

of Officer Johnson's testimony (because he commented that Officer Johnson had done nothing wrong), the judge could still have drawn inferences against the State in resolving the motion to suppress. In doing so, he would have infringed on the jury's role in resolving the question of guilt.[94]

■■■ It is axiomatic that even an erroneous acquittal counts as an acquittal for double-jeopardy purposes,[95] and one Supreme Court case suggests this is true even in the context of collateral estoppel.[96] Nevertheless, a distinction could possibly be made between giving preclusive effect to ultimate issues resolved by an acquittal that was wrongly procured and giving preclusive effect to an evidentiary issue that should never have been litigated in the first place. Assuming, without deciding,

that such a distinction does not, by itself, defeat appellant's claim in the present case,[97] we consider the continuing validity of the proposition that collateral estoppel applies only when the issue in question constitutes an essential element in the subsequent prosecution.

### 4. Ultimate Issue in the Second Prosecution?

#### a. Ashe

The Supreme Court's formulation of collateral estoppel in *Ashe*, by including a reference to "an issue of ultimate fact," in itself suggests that the issue upon which preclusion is sought should be an ultimate issue in at least one (and perhaps both) of the prosecutions. In *Ashe*, the issue (identity) was "ultimate" in both prosecutions.

(Tex.Crim.App.1997) (motion for directed verdict is construed as a challenge to the sufficiency of the evidence).

94. If, in addition to assuming that the judge believed all of Officer Johnson's testimony, we further assumed that the judge drew all inferences in the prosecution's favor, then appellant's collateral-estoppel claim would fail, under any understanding of collateral estoppel, because the issue on which appellant seeks preclusion would not be essential to the judgment: To acquit the defendant in the failure-to-identify prosecution, it is not necessary for the trial judge to conclude that the State failed to prove the legality of the seizure *by a preponderance of the evidence;* it is only necessary to conclude that the State failed to do so *beyond a reasonable doubt. See* RESTATEMENT OF JUDGMENTS § 68 (preclusive effect accorded only to a prior determination that is "essential to the judgment"); RESTATEMENT (SECOND) OF JUDGMENTS § 27 (same). However, if the trial judge had in fact viewed the entire record (including inferences) in the State's favor, and still believed that the State failed to prove the validity of the seizure, he could have granted appellant's motion for directed verdict without granting the motion to suppress (or independent of the motion to suppress).

95. *State v. Moreno,* 294 S.W.3d 594, 600 (Tex. Crim.App.2009) (relying upon *Fong Foo v.*

*United States,* 369 U.S. 141, 82 S.Ct. 671, 7 L.Ed.2d 629 (1962)).

96. *See Sanabria v. United States,* 437 U.S. 54, 72–73, 77–78, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978); *id.* at 72–73, 98 S.Ct. 2170 (Acquittal for insufficient proof of the element that the defendant was connected to a particular gambling business would bar prosecution for any crime which shared that element.); *id.* at 77–78, 98 S.Ct. 2170 (Judgment of acquittal in which Government's evidence was erroneously excluded "is final and unreviewable" and "absolutely bars a second trial.").

97. We note that the prosecutor in the failure-to-identify prosecution did not object to the trial court considering appellant's motion to suppress and did not draw the trial court's attention to *Woods.* We need not decide whether the failure to object at that stage has procedural default consequences for the State in a subsequent prosecution. *See State v. Mercado,* 972 S.W.2d 75, 77–78 (Tex.Crim. App.1998) (notions of procedural default apply to the State); *Ex parte Granger,* 850 S.W.2d 513 (Tex.Crim.App.1993) (distinguishing prior case of *Stephens v. State,* 806 S.W.2d 812 (Tex.Crim.App.1990) on the basis that the State in *Stephens* was barred from prosecuting a lesser-included offense in a subsequent trial after acquittal for the greater offense on appeal on legal insufficiency grounds when a lesser-included-offense instruction had not

The defendant was prosecuted for robbing one of six individuals at a poker game and was acquitted.[98] The State then prosecuted the defendant for robbing a second individual at the game.[99] But the only rationally conceivable issue in dispute in the first prosecution was whether the defendant was one of the robbers.[100] Because the jury, by its verdict, found that ultimate issue in the defendant's favor, collateral estoppel barred the subsequent prosecution for robbing a second individual at that same game.[101]

The *Ashe* court also explained that collateral estoppel, though originally developed in civil litigation, had been a rule in criminal cases for over fifty years.[102] Notably, the Supreme Court suggested that collateral estoppel might be at least as protective in criminal cases as in civil cases when it quoted Justice Holmes's statement that, "It cannot be that the safeguards of the person, so often and so rightly mentioned with solemn reverence are less than those that protect from a liability in debt."[103] We must keep in mind, however, that this statement was quoted in connection with the *Ashe* formulation of the collateral-estoppel rule.

### b. The Ashe Approach

The formulation articulated in *Ashe* had been applied previously in *Yates v. United States*[104] to preclude the application of collateral estoppel to issues that were not ultimate in nature. In *Yates*, the defendants were convicted of conspiring to advocate the overthrow of the United States government by force and violence.[105] One of the defendants had prevailed at an earlier denaturalization proceeding, which may have involved the litigation of some facts that were also relevant to the criminal proceeding.[106] Among other things, this defendant claimed that the determinations made in the denaturalization case were relevant to the criminal proceeding, "even if they do not conclude it, and hence that [the defendant] should be entitled to an instruction giving those determinations such partial conclusive effect as they might warrant."[107] The Supreme Court held that "the doctrine of collateral estoppel does not establish any such concept of 'conclusive evidence' as that contended for" by the defendant.[108] "The normal rule," the Supreme Court explained, "is that a prior judgment need be given no conclusive effect at all unless it establishes one of the ultimate facts in issue in the subsequent proceeding. So far as merely evidentiary or 'mediate' facts are concerned, the doctrine of collateral estoppel is inoperative."[109] In support of this "normal rule," the Supreme Court cited *The Evergreens v. Nunan*[110] and comment p of § 68 of the original Restatement of Judg-

been submitted in the earlier trial, and the State had failed to request one).

98. *Ashe*, 397 U.S. at 437–39, 90 S.Ct. 1189.

99. *Id.* at 439–40, 90 S.Ct. 1189.

100. *Id.* at 445, 90 S.Ct. 1189.

101. *Id.*

102. *Id.* at 443, 90 S.Ct. 1189.

103. *Id.* (quoting *United States v. Oppenheimer*, 242 U.S. 85, 87, 37 S.Ct. 68, 61 L.Ed. 161 (1916)).

104. 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957).

105. *Id.* at 300, 77 S.Ct. 1064.

106. *Id.* at 335, 77 S.Ct. 1064.

107. *Id.* at 337, 77 S.Ct. 1064.

108. *Id.* at 337–38, 77 S.Ct. 1064.

109. *Id.* at 338, 77 S.Ct. 1064.

110. 141 F.2d 927 (2d Cir.1944).

ments.[111]

Comment p ruled out the use of evidentiary facts in the civil collateral-estoppel context: "Evidentiary facts. The rules stated in this Section are applicable to the determination of facts in issue, but not to the determination of merely evidentiary facts, even though the determination of the facts in issue is dependent upon the determination of the evidentiary facts." [112]

In *The Evergreens*, Judge Learned Hand addressed, in the civil context, the question of whether a previously litigated fact must be an ultimate issue in the first or second lawsuits in order to be given preclusive effect under the doctrine of collateral estoppel.[113] He observed that there was a conflict in authority regarding whether an issue must be an ultimate fact in the first suit.[114] He was aware of no case, however, that allowed facts decided in the first suit (ultimate or not) to be used as mere "mediate data" in the second.[115] Confronted with a dearth of authority, and being free to decide, the court did "not hesitate to hold" that, even assuming "mediate data" decided in the first suit could be used to establish "ultimate" facts in the second, no fact decided in the first suit— whether "ultimate" or "mediate"—could conclusively establish anything other than an "ultimate" fact in the second suit.[116]

### c. The Fifth Circuit and Other Jurisdictions

As discussed earlier in this opinion, the Fifth Circuit—in the *Wingate* line of cases—departed from the *Ashe* approach and took an expansive view of the collateral-estoppel protection in criminal prosecutions. But the Fifth Circuit conducted an about-face in 1994 in *Wright v. Whitley*.[117] In that case, the defendant was acquitted of two weapon-possession charges, and he was subsequently charged with murder.[118] The defendant sought, unsuccessfully, to use the fact of those earlier acquittals to bar certain testimony regarding his possession of a rifle.[119] Rejecting the defendant's claim, the Fifth Circuit decided that *Wingate*'s "broader reading of *Ashe*"— applying collateral estoppel to the relitigation of evidentiary facts—"has not been accepted by the Supreme Court." [120] Instead, the Fifth Circuit found that the Supreme Court's decision in *Dowling* "teaches that the *Ashe* holding only bars relitigation of a previously rejected factual allegation where that fact is an ultimate issue in the subsequent case." [121]

In *Brackett*, the Fifth Circuit retreated somewhat from this expansive interpretation of *Dowling*—characterizing *Dowling* more narrowly as a burden-of-proof case.[122] The Fifth Circuit believed that *Dowling*'s burden-of-proof holding effectively limited the doctrine of collateral es-

---

111. *Yates*, 354 U.S. at 338, 77 S.Ct. 1064.

112. RESTATEMENT OF JUDGMENTS § 68 cmt. p.

113. *The Evergreens*, 141 F.2d at 928–931.

114. *Id.* at 928–29.

115. *Id.* at 930.

116. *Id.* at 930–31.

117. 11 F.3d 542 (5th Cir.1994).

118. *Id.* at 545.

119. *Id.*

120. *Id.* at 545.

121. *Id.* at 546.

122. *Brackett*, 113 F.3d at 1401. For discussion of *Dowling*'s holding on burden of proof, *see* this opinion, *ante*.

toppel to the prosecution's attempt to relitigate an essential element of an offense because "only ultimate facts must be established beyond a reasonable doubt." [123] The Fifth Circuit found it "difficult to conceive of a case in which collateral estoppel would bar admission or argumentation of facts necessarily decided in the first trial, without completely barring the subsequent prosecution," but it stated, "[W]e have no occasion to consider whether *Dowling* has overruled this line of decisions, and we leave that question for another day." [124]

There is a split among the federal circuits and various other jurisdictions on whether collateral estoppel can ever apply to facts that are merely evidentiary in the second prosecution. [125]

### d. The Restatement (Second)

The Restatement (Second) of Judgments has taken a dramatically different position from the original Restatement regarding the application of collateral estoppel to evidentiary facts. Comment j of § 27 eschews any distinction between "evidentiary" and "ultimate" facts and takes the position that the appropriate question "is whether the issue was actually recognized by the parties as important and by the trier as necessary to the first judgment." [126] In support of this position, the comment makes two arguments: (1) that the "line between ultimate facts and evidentiary facts is often impossible to draw," and (2) that, "great effort may have been expended by both parties" in litigating the

---

**123.** *Brackett,* 113 F.3d at 1401 n. 9.

**124.** *Id.*

**125.** For authority in favor of extending collateral estoppel to such evidentiary facts, *see United States v. Moffett,* 882 F.2d 885, 889, 889 n. 2 (4th Cir.1989); *United States v. Castillo–Basa,* 483 F.3d 890, 897 n. 4 (9th Cir. 2007) (contending that a restriction of collateral estoppel to issues of ultimate fact is "completely without foundation"); *United States v. Carter,* 60 F.3d 1532, 1535 (11th Cir.1995); *Laughlin v. United States,* 344 F.2d 187, 189–92 (D.C.Cir.1965) (collateral-estoppel effect accorded the suppression of tape recordings in earlier prosecution); *State v. Aparo,* 223 Conn. 384, 408 n. 9, 614 A.2d 401, 413 n. 9 (1992) (referring to "well established rule that collateral estoppel may exclude evidence in certain cases"); *Underwood v. State,* 722 N.E.2d 828 (Ind.2000) (citing *Little v. State,* 501 N.E.2d 412 (Ind.1986)); *Little,* 501 N.E.2d at 413–14 (relying in part upon *Mock* ); *People v. Acevedo,* 69 N.Y.2d 478, 484–87, 515 N.Y.S.2d 753, 508 N.E.2d 665, 669–71 (Ct.App.1987); *Commonwealth v. Holder,* 569 Pa. 474, 479–80, 479 ns. 3, 4, 805 A.2d 499, 502, 502 ns. 3, 4 (2002) (citing RESTATEMENT (SECOND) OF JUDGMENTS § 27); *Simon,* 220 Va. at 416–18, 258 S.E.2d at 570–71; *State v. Thomas Kramsvogel,* 124 Wis.2d 101, 122, 369 N.W.2d 145, 155 (1985).

For authority against applying collateral estoppel to evidentiary facts, *see United States v. Bailin,* 977 F.2d 270, 277 n. 9 (7th Cir.1992) (earlier Second Circuit case, "insofar as it held that issue preclusion applies to evidentiary as well as ultimate facts, has been partially overruled by *Dowling* "); *Flittie v. Solem,* 775 F.2d 933, 942 (8th Cir.1985) (stating the law of the Eighth Circuit as "collateral estoppel does not bar relitigation of facts that are evidentiary in the second prosecution"); *State v. Gusman,* 125 Idaho 805, 809, 874 P.2d 1112, 1116 (1994) ("Collateral estoppel only precludes the relitigation of *ultimate issues* of fact.") (emphasis in original); *State v. Sharkey,* 574 N.W.2d 6, 9 (Iowa 1997) ("[C]ollateral estoppel applies only to ultimate facts, not to evidentiary facts."); *State v. Glenn,* 160 N.H. 480, 492–93, 9 A.3d 161, 171 (2010) ("[C]ollateral estoppel does not forbid the relitigation of an issue as one of evidentiary fact, even if the State has lost on the same issue as one of ultimate fact to be proven beyond a reasonable doubt in a prior trial.") (brackets and internal quotation marks omitted); *Eatherton v. State,* 810 P.2d 93, 99 (Wyo.1991) (adopting rule as articulated in *Flittie* ).

**126.** RESTATEMENT (SECOND) OF JUDGMENTS § 27 cmt. j.

issue "and it may well have been regarded as the key issue in dispute." [127]

A number of jurisdictions have adopted comment j in civil cases.[128] Although the doctrine of collateral estoppel was originally developed in civil cases, one question is whether collateral estoppel in the criminal law must match any evolution in the civil law or whether developments in the civil law have gone further than is appropriate for criminal cases. The Restatement (Second) of Judgments is by its terms limited to "the preclusive effects of judgments in civil actions" and so takes no position on whether its principles apply in criminal cases.[129] A perusal of the authorities discussed above reveals that New Hampshire and Iowa have retained the *Ashe* approach in criminal cases despite being receptive in civil cases to the "new" approach embodied in comment j.[130]

The Supreme Court has cited § 27 of the Restatement (Second) of Judgments in two recent double-jeopardy cases, but it has not cited to comment j or expressly addressed the issue currently before us.[131]

Though it has characterized as "more descriptive," § 27's use of the term "issue preclusion" in place of "collateral estoppel," [132] the Court nevertheless continues to refer to the "ultimate fact" language found in *Ashe*.[133]

In *Standefer v. United States,* the Supreme Court recognized that the doctrine of collateral estoppel may carry limitations in criminal cases that do not exist in civil cases.[134] Standefer was charged as a party to official misconduct.[135] The official in question was also charged but was acquitted on some of the counts.[136] Standefer wished to use that acquittal to establish that he could not have aided the commission of those counts.[137] In declining to permit the nonmutual use of collateral estoppel, the Supreme Court explained that "the Government is often without the kind of 'full and fair opportunity to litigate' that is a prerequisite of estoppel." [138] The Court pointed to several aspects of criminal law that make this so:

> [T]he prosecution's discovery rights in criminal cases are limited, both by rules

127. *Id.*

128. *Rodriguez–Garcia v. Miranda–Marin,* 610 F.3d 756, 771 (1st Cir.2010) ("[C]ollateral estoppel is no longer limited to ultimate issues: necessary *intermediate* findings can now be used to preclude litigation.") (emphasis in original); *Synanon Church v. United States,* 820 F.2d 421, 426–27 (D.C.Cir.1987) (rejecting *The Evergreens* view in favor of the Restatement (Second)); *Meier v. Commissioner,* 91 T.C. 273, 283–86 (1988) (same); *Smith v. Roane,* 284 Ark. 568, 570, 683 S.W.2d 935, 936 (1985) (same); *Comes v. Microsoft Corp.,* 709 N.W.2d 114, 121 (Iowa 2006) (adopting comment j); *In Re Zachary G.,* 159 N.H. 146, 151, 982 A.2d 367, 372 (2009) (favorable citation to comment j); *see also Winters v. Lavine,* 574 F.2d 46, 58 n. 12 (2d Cir.1978) (criticizing rule from *The Evergreens* and citing favorably a tentative draft of comment j).

129. Restatement (Second) of Judgments, Ch. 1: Introduction, Scope Note; *see also id.,* § 85, Reporter's Notes, last para. ("The preclusive effect in a subsequent criminal prosecution of a prior civil judgment against the government is outside the scope of this Restatement.").

130. *Compare,* this opinion, footnotes 125 and 128.

131. *See Bies,* 129 S.Ct. at 2152; *Yeager,* 129 S.Ct. at 2367 n. 4.

132. *Yeager,* 129 S.Ct. at 2367 n. 4.

133. *Id.* at 2367; *Bies,* 129 S.Ct. at 2153.

134. 447 U.S. 10, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980).

135. *Id.* at 11, 100 S.Ct. 1999.

136. *Id.* at 13, 100 S.Ct. 1999.

137. *Id.*

138. *Id.* at 22, 100 S.Ct. 1999.

of court and constitutional privileges; it is prohibited from being granted a directed verdict or from obtaining a judgment notwithstanding the verdict no matter how clear the evidence in support of guilt ...; it cannot secure a new trial on the ground that an acquittal was plainly contrary to the weight of the evidence ...; and it cannot secure appellate review where a defendant has been acquitted.[139]

The Court also noted rules of evidence that are unique to criminal law that might make evidence inadmissible against one defendant that is admissible against another, and the Court pointed to the "important federal interest in the enforcement of the criminal law."[140] And though the concern about the admissibility of evidence could possibly be met on a case-by-case basis by conducting a pretrial hearing to determine whether a trial court's evidentiary ruling had deprived the government of a chance to present its case the first time around, that process "could prove protracted and burdensome."[141]

The ability of a party to fully and fairly litigate the claim in question is also a part of the Restatement (Second) approach. Under § 28, the Restatement (Second) outlines an exception to the general rule of issue preclusion, when "[t]he party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action."[142] The prosecution cannot obtain review of an acquittal,[143] and so a precondition for applying the Restatement (Second) scheme to criminal cases seems to be absent.[144] It is true that the absence of appellate review is not always "an essential predicate of estoppel"[145] (see *Ashe*, for example), but the collateral-estoppel doctrine is "premised upon an underlying confidence that the result achieved in the initial litigation was substantially correct," and in the absence of appellate review, such confidence is often unwarranted.[146] Thus, the absence of review counsels in favor of retaining the narrower *Ashe* approach to collateral estoppel in criminal cases.

 The State can obtain appellate review of a trial court's ruling on a motion to suppress if the ruling is made before trial.[147] But, under *Woods*, the trial court in the present case was not authorized to rule upon the legality of the detention before trial. Even in the more common case in which such authority exists, a trial court is not required to rule on a motion to

---

139. *Id.*

140. *Id.* at 23–24, 100 S.Ct. 1999.

141. *Id.* at 24, 100 S.Ct. 1999.

142. RESTATEMENT (SECOND) OF JUDGMENTS, § 28(1).

143. *See Standefer, supra.*

144. *See* RESTATEMENT (SECOND) OF JUDGMENTS, § 85(3) ("A judgment against the prosecuting authority is preclusive against the government only under the conditions stated in §§ 27–29."); *id.*, § 85 cmt. g ("If the matter adjudicated was one of affirmative defense and the defendant had the burden of establishing the defense by a preponderance of the evidence, it would be appropriate to treat the issue as conclusive against the government in a subsequent civil action. However, the government usually does not have a right of appellate review of a criminal judgment, so that the exception created in § 28(1) would ordinarily deny preclusive effect to the finding even in the case of an affirmative defense. Hence it would be a rare case in which an acquittal could result in preclusion against the government in a subsequent civil action.").

145. *Standefer*, 447 U.S. at 23, 100 S.Ct. 1999.

146. *Standefer*, 447 U.S. at 23, 100 S.Ct. 1999.

147. TEX.CODE CRIM. PROC. art. 44.01(a)(5).

suppress before trial,[148] and sometimes a trial court may find it useful to carry the motion along with the trial on the merits.[149]

### e. Interests underlying Double Jeopardy and Criminal Cases

 But even when a motion to suppress is granted pretrial, the State has the option to simply dismiss the case, and in doing so, prevent the attachment of jeopardy to the first prosecution.[150] If jeopardy has not attached, then no aspect of double jeopardy, including its collateral-estoppel component, is implicated.[151] This fact suggests that suppression issues are simply not the type of issues that implicate double jeopardy in the first place. When a defendant is placed in jeopardy, he is placed in jeopardy for the elements of the offense, not for mere evidentiary matters. Such a view is consistent with the Supreme Court's rejection of the *Grady v. Corbin*[152] same-conduct standard, and its reaffirmation of the importance of the elements of the offense in the double-jeopardy context.[153]

 Perhaps for this reason, the Supreme Court has never abandoned *Ashe*'s "ultimate fact" language. For jeopardy to attach to an issue in the *first* prosecution, the issue must be "ultimate" rather than merely evidentiary. If jeopardy does not attach to a particular issue in the first prosecution, then that issue cannot become the basis for collateral estoppel in a subsequent prosecution. Indeed, the Fifth Circuit's conclusion in *Brackett* that the burden-of-proof holding in *Dowling* would effectively exempt evidentiary facts from the operation of collateral estoppel seems to be based on the idea that the issue on which preclusion is sought would be an ultimate issue in the *first* prosecution, so that the issue in the first prosecution would nearly always be subject to the beyond-a-reasonable-doubt standard of proof, while an evidentiary fact in a second prosecution would nearly always be subject to a lesser standard proof.[154]

148. *Calloway v. State*, 743 S.W.2d 645, 649 (Tex.Crim.App.1988); *Bell v. State*, 442 S.W.2d 716, 719 (Tex.Crim.App.1969).

149. *See Garza v. State*, 126 S.W.3d 79, 84–85 (Tex.Crim.App.2004) (error preserved by late objection when trial judge indicated that motion to suppress would be carried with trial).

150. *See Ortiz v. State*, 933 S.W.2d 102, 105–06 (Tex.Crim.App.1996) (jeopardy attaches in Texas when the jury is sworn in a jury trial, when the defendant pleads to the indictment in a bench trial, or when a plea agreement is accepted in a plea-bargain setting)

151. *See United States v. Martin Linen Supply Co.*, 430 U.S. 564, 569, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977) (before double-jeopardy protections are implicated, jeopardy must have attached); *State v. Moreno*, 294 S.W.3d 594, 597 (Tex.Crim.App.2009) (same); *Reynolds*, 4 S.W.3d at 20 (collateral estoppel not implicated by civil administrative proceeding [a proceeding in which jeopardy would never attach]); *Guajardo v. State*, 109 S.W.3d 456, 462–63 (Tex.Crim.App.2003) (Meyers, J., concurring) (collateral estoppel, as a component of double jeopardy, does not apply to determinations made in a proceeding that was dismissed before jeopardy attached); *United States v. Dionisio*, 503 F.3d 78, 85 (2d Cir. 2007) (same).

152. 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990).

153. *See United States v. Dixon*, 509 U.S. 688, 703–09, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993); *id.* at 704, 113 S.Ct. 2849 (adopting J. Scalia's *Grady* dissent); *Grady*, 495 U.S. at 529, 110 S.Ct. 2084 (Scalia, J., dissenting) (The language of the Double Jeopardy Clause "protects individuals from being twice put in jeopardy 'for the same offence,' not for the same conduct or actions.").

154. *See Brackett*, 113 F.3d at 1401 n. 9 ("Because only ultimate facts must be established beyond a reasonable doubt, however, *Dowling*

In the present case, the legality of the detention was an ultimate issue in the first prosecution, but, as explained above, that status as an ultimate issue does not help appellant because of the lesser burden of proof with respect to suppression hearings. If, on the other hand, he relies upon the county court at law's resolution of the detention issue solely as a suppression issue—so that the burden of proof in the two prosecutions is the same—then we are confronted with an issue that was not an ultimate issue in *either* prosecution. To accord collateral-estoppel protection, under the rubric of double jeopardy, to such an issue would stray far from the theoretical groundings of the Double Jeopardy Clause and the Supreme Court's earlier pronouncements on the issue of collateral estoppel.[155]

In light of our discussion, we reaffirm the bottom-line result in *Murphy* as controlling where a defendant seeks to bar the relitigation of suppression issues on the basis of double jeopardy. That is, the State is not barred by the Double Jeopardy Clause from relitigating a suppression issue that was not an ultimate fact in the first prosecution and was not an ultimate fact in the second prosecution. We overrule appellant's second ground for review.

The judgment of the court of appeals is affirmed.

WOMACK, J., filed a concurring opinion.

COCHRAN, J., filed a concurring opinion in which JOHNSON, J., joined.

WOMACK, J., filed a concurring opinion.

The Court has determined that for double-jeopardy-based collateral estoppel to bar the relitigation of a fact, that fact must be an essential element in both the prior prosecution and the subsequent prosecution.[1] I believe that this rule is a correct statement of the law.

I write separately to offer an alternate explanation for the rule, and to note its limitations.

effectively limits the doctrine of collateral estoppel to cases in which the government seeks to relitigate an essential element of the offense.").

**155.** Judge Womack's concurrence raises some interesting (and complex) questions regarding both the scope of the collateral estoppel doctrine within the double-jeopardy protection and whether the collateral estoppel doctrine has any vitality outside the double-jeopardy context. Does the double-jeopardy protection—via *Ashe*'s "ultimate fact" language—include the application of collateral estoppel to defenses (e.g. self-defense) and punishment-mitigation issues (e.g. sudden passion), and if not, should preclusive effect be given to jury findings on these types of issues on some other basis? *See United States v. Oppenheimer*, 242 U.S. 85, 37 S.Ct. 68, 61 L.Ed. 161 (1916) (pre-*Ashe* case applying collateral estoppel to a statute of limitations defense); *Ex parte Watkins*, 73 S.W.3d 264, 267–

72 (Tex.Crim.App.2002) (applying collateral estoppel to sudden-passion punishment-mitigation issue under the rubric of double jeopardy in the pretrial habeas setting); *Guajardo v. State*, 109 S.W.3d at 468–69 (Tex.Crim.App. 2003) (Hervey, J., concurring) (arguing that collateral estoppel does not exist in criminal cases outside the double-jeopardy context). Should we re-think some of our other precedents (besides *Murphy*) in light of evolving Supreme Court jurisprudence? We need not address those questions here. It is enough here to hold that double-jeopardy protections are not involved when the issues on which the defendant seeks preclusion are not ultimate in nature.

1. The Court at times uses the terms "ultimate fact" instead of "essential element." However, the Court also argues that for an issue to be an "ultimate fact," jeopardy must attach to it. Therefore, I believe that my statement of the Court's rule is accurate.

## I. Terminology

This area of the law has an intricate terminology, which I have found it helpful to review.

The common law of finality is known as *res judicata*,[2] some parts of which have been codified in statutes and rules, and some parts incorporated in the Federal Constitution. I shall first address the underlying common law.

*Res judicata* "specifies the effect that any adjudication has on all subsequent litigation."[3] *Res judicata* encompasses claim preclusion and issue preclusion.[4] Claim preclusion prohibits a second suit based on the same claim between the same parties.[5] Issue preclusion prohibits a party from relitigating an issue (such as a fact, a question of law, or an application of law to fact) that was previously determined in a suit between the same parties.[6] Issue preclusion comprises two types of estoppel, collateral and direct. Collateral estoppel is issue preclusion in a suit that is based on a different claim than the suit in which the issue was originally decided. Direct estoppel is issue preclusion in a suit based on the same claim as the suit where the issue was originally decided. Because claim preclusion will generally prohibit a second suit on the same claim, questions of collateral estoppel are much more common than questions of direct estoppel.[7]

## II. *Res Judicata* and Double Jeopardy

In the criminal law, claim preclusion has been subsumed by the Fifth Amendment prohibition of double jeopardy.[8] While a narrow interpretation of the Fifth Amendment would cover only instances of claim preclusion,[9] the Supreme Court has determined that the Fifth Amendment

---

2. "A thing adjudicated." BLACK'S LAW DICTIONARY (9th ed.2009).

3. ROBERT C. CASAD & KEVIN M. CLERMONT, RES JUDICATA: A HANDBOOK ON ITS THEORY, DOCTRINE, AND PRACTICE 3 (2001).

4. Confusingly, claim preclusion has traditionally been referred to as *"res judicata"* and issue preclusion has been referred to as "collateral estoppel." *See, e.g., Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). Both of these terms, however, have different uses, and the modern trend is to use the terms "claim preclusion" and "issue preclusion." *Baker by Thomas v. General Motors*, 522 U.S. 222, 233 n. 5, 118 S.Ct. 657, 139 L.Ed.2d 580 (1998).

5. *See* 18 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD N. COOPER, FEDERAL PRACTICE & PROCEDURE § 4402 (2d.2002) (quoting *Kaspar Wire Works, Inc. v. Leco Engr'g & Mach., Inc.*, 575 F.2d 530, 535–36 (5th Cir.1978)).

6. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 27 (1982).

7. CASAD & CLERMONT, *supra* note 3, at 10 (noting that the term "collateral estoppel" has come to be regarded as a generic term for both types of issue preclusion, but that the term "issue preclusion" is preferable).

8. *See* U.S. CONST. amend. V ("nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb"); *see also* CASAD & CLERMONT, *supra* note 3, at 23 (noting that double jeopardy and claim preclusion are slightly different, and then concluding: "Because jeopardy attaches even before judgment, any judgment that would be valid, final, and on the merits for purposes of [claim preclusion] would also be one covered by double jeopardy. The existence of the double jeopardy protection thus has retarded the independent application of the claim preclusion aspects of *res judicata* in repetitive criminal cases.")

9. *See United States v. Dixon*, 509 U.S. 688, 703–12, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993) (re-establishing and tracing the history of the rule that the Fifth Amendment bars a subsequent prosecution only when the subsequent prosecution is for an offense that meets the "same-elements" test laid out in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932)).

also incorporates at least one type of issue preclusion. In *Ashe v. Swenson*,[10] the Supreme Court held that where a jury acquitted a defendant of robbing a poker player because it did not believe he was one of the robbers, the Fifth Amendment barred prosecutors from relitigating the issue of identity in another trial for the robbery of another player in the same poker game.[11]

Narrowly interpreted, *Ashe* applies only where the already proven fact from the first prosecution is an essential element of the offense in both the first and second prosecutions. I shall call this "essential-issue preclusion." Since the abolition of federal common law in state cases,[12] the only basis for the Supreme Court to interject a common-law concept like *res judicata* into a state case like *Ashe* would be if that common-law concept were incorporated in the Constitution. The Supreme Court's repeated interpretations of the double jeopardy clause are adamant that double-jeopardy analysis is grounded in the essential elements of an offense.[13] Because only the charged offense places a defendant in jeopardy of life or limb, the relitigation of facts that are not elements of the offense in two prosecutions cannot create double jeopardy.

Although the Fifth Amendment incorporates only essential-issue preclusion, this does not mean that essential-issue preclusion is the only type of *res judicata* in criminal cases. Indeed, *Ashe* stated that the use of "collateral estoppel" in criminal cases was already an "established rule of federal law at least since [the] court's decision ... in *United States v. Oppenheimer*."[14] That case was not a case of essential-issue preclusion.

Oppenheimer had been charged with a federal offense, but the indictment was quashed after the trial judge ruled that the statute of limitations for the offense had run.[15] Oppenheimer was later reindicted for the same offense when a ruling in an unrelated case determined that the statute of limitations was longer than first believed. The Supreme Court held that, while it was not a Fifth Amendment matter,[16] as a matter of *res judicata* the second prosecution was barred.[17]

### III. The *Murphy* Test

The Court's opinion discusses at length the test for issue preclusion that this Court had come to use and which was stated in *Murphy v. State:*

> To determine whether collateral estoppel bars a subsequent prosecution or permits the prosecution but bars reliti-

10. 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970).

11. *Id.,* at 445–47, 90 S.Ct. 1189.

12. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78–80, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

13. *See Dixon,* 509 U.S., at 703–712, 113 S.Ct. 2849.

14. *Ashe,* 397 U.S. at 445, 90 S.Ct. 1189.

15. *United States v. Oppenheimer,* 242 U.S. 85, 85, 37 S.Ct. 68, 61 L.Ed. 161 (1916).

16. *Id.,* at 87, 37 S.Ct. 68 (accepting the prosecution's assertion that the case was one where

"the defendant never has been in jeopardy in the sense of being before a jury upon the facts of the offense charged").

17. *Id.,* at 87–88, 37 S.Ct. 68 ("The safeguard provided by the Constitution against the gravest abuses has tended to give the impression that when it did not apply in terms, there was no other principle that could. But the 5th Amendment was not intended to do away with what in the civil law is a fundamental principle of justice in order, when a man once has been acquitted on the merits, to enable the government to prosecute him a second time" (citation omitted)).

gation of certain specific facts, this court has adopted the two-step analysis employed by the Fifth Circuit. *See Neal v. Cain,* 141 F.3d 207, 210 (5th Cir.1998); *see also [Ex Parte Taylor,* 101 S.W.3d 434, 440 (Tex.Cr.App.2002) ]. This court stated that a court must determine (1) exactly what facts were necessarily decided in the first proceeding, and (2) whether those "necessarily decided" facts constitute essential elements of the offense in the second trial.[18]

On its face, this test purports to apply a two-part analysis to questions of both essential-issue preclusion (where "collateral estoppel bars a subsequent prosecution"[19]) and non-essential-issue preclusion (where "collateral estoppel ... permits the prosecution but bars relitigation of certain specific facts"). However, the second part of the two-part analysis requires that the fact-to-be-barred be an element of the second offense. Thus, in analyzing whether issue preclusion applies, this test eliminates the possibility of non-essential-issue preclusion and leaves only essential-issue preclusion.

How had this Court come to apply a test to questions of non-essential issue preclusion that eliminates the possibility of non-essential-issue preclusion? *Murphy* cited to *Taylor* for the proposition that we use a test from the Fifth Circuit. In *Taylor,* the test was formatted differently:

To determine whether collateral estoppel bars a subsequent prosecution (or permits prosecution but bars relitigation of certain specific facts) courts employ a two-step analysis. Courts must determine:

(1) exactly what facts were "necessarily decided" in the first proceeding; and

(2) whether those "necessarily decided" facts constitute essential elements of the offense in the second trial.[20]

It is not immediately clear to me what difference the parentheses make. Expressed in this format, does the test present non-essential-issue preclusion as an alternative to essential issue preclusion if the prongs of the test are not met? Or does it subject non-essential issue preclusion to the same test as essential-issue preclusion?

*Taylor* itself dealt with a pre-trial habeas applicant who alleged that an element of the offense for which he was being prosecuted had been decided in a previous case in which he had been acquitted.[21] Thus it was a question of essential-issue preclusion governed by *Ashe. Taylor,* even while discussing *Ashe,* still spoke broadly of "issue preclusion" and cited to sources that discussed issue preclusion without differentiating between essential and non-essential issues.[22] The court of appeals decision

---

**18.** *Murphy v. State,* 239 S.W.3d 791, 795 (Tex. Cr.App.2007).

**19.** Strictly speaking, essential issue preclusion does not bar prosecution, as claim preclusion or ordinary double jeopardy would. Rather, it bars the State from litigating an essential element of the offense. That was the narrow issue *Ashe* addressed. *See Ashe,* 397 U.S. at 446–47, 90 S.Ct. 1189. Of course, if a prosecution were brought in such circumstances, the defendant would be entitled to a directed verdict, which means that the prosecution would be *practically* barred. Additionally,

there may be due process and ethical problems with bringing a prosecution where the State knew it would be unable to prove an essential element, but those matters are beyond the scope of the Fifth Amendment.

**20.** *Taylor,* 101 S.W.3d at 440 (citing *Neal v. Cain,* 141 F.3d 207, 210 (5th Cir.1998)).

**21.** *Id.,* at 436.

**22.** *See, e.g., id.,* at 442.

which *Taylor* affirmed treated the matter as one of essential-issue preclusion.[23]

It is worthwhile to look at the authority for *Taylor*. It cited the Fifth Circuit's opinion in *Neal v. Cain*[24] as the source for its test.[25] In *Neal*, the test is formatted differently and is preceded with an explanation:

> As the Supreme Court has recognized, the Double Jeopardy Clause incorporates the doctrine of collateral estoppel.... As applied against the government in criminal cases, collateral estoppel may either bar a subsequent prosecution, or it may prevent the relitigation of particular facts necessarily established in the prior proceeding. *In determining whether collateral estoppel bars a subsequent prosecution,* as Neal contends it does here, we engage in a two-step analysis. First, we must discern which facts were necessarily decided in the first proceeding. We then consider whether the facts necessarily decided in the first trial constitute essential elements of the offense in the second trial.[26]

In this statement it is clear that the two-part test is meant to discriminate between non-essential- and essential-issue preclusion. While *Neal* broadly discussed "collateral estoppel," the holding applied only to essential-issue preclusion. This makes

sense in the context of the case: Because *Ashe* constitutionalized only essential-issue preclusion, the Fifth Circuit would not be deciding a matter of non-essential-issue preclusion in *Neal*, which was a claim for habeas relief from a state conviction.[27] Through the confusion caused by the general term "collateral estoppel," *Taylor* and *Murphy* have suggested that the test for essential issue preclusion also applied to questions of non-essential-issue preclusion. Because this test, by its very terms, will never find something that it purports to test for, *i.e.* non-essential-issue preclusion, we should use a different test.

By my reading, the Court and I are in agreement that the *Murphy* rule is not an accurate statement of the law, and today's opinion replaces the *Murphy* rule.

## IV. The Need for a Texas Rule

While I agree with the Court that the appellant has sought relief based only on double jeopardy protections, I would like to observe that today's holding does not foreclose the possibility of non-essential-issue preclusion based on non-constitutional grounds. The basis for my observation is two-fold. First, the language we have used in many cases has presumed that "collateral estoppel" could apply to facts that were not essential elements.[28] Sec-

**23.** *Ex parte Taylor*, 2000 WL 19151, at *2, *6 (Tex.App.-Houston [14th Dist.] January 13, 2000) (mem.op.).

**24.** 141 F.3d 207 (5th Cir.1998).

**25.** *See Taylor*, 101 S.W.3d, at 440 n. 17.

**26.** *Neal*, 141 F.3d, at 210 (emphasis added) (citations omitted).

**27.** For its essential issue preclusion test, *Neal* cited to *United States v. Brackett*, 113 F.3d 1396, 1398 (5th Cir.1997), a federal prosecution that addressed both essential and non-essential issue preclusion. Because non-essential issue preclusion is not a constitutional

matter, the Fifth Circuit's discussions on the topic carry less weight in determining how we should address the issue.

**28.** Such language appears in numerous cases cited by the Court: *Murphy*, 239 S.W.3d, at 795 (purporting to apply an issue preclusion test to situations where issue preclusion "permits the prosecution but bars religitation of certain specific facts"); *Taylor*, 101 S.W.3d at 440 (same); *Dedrick v. State*, 623 S.W.2d 332, 336 (Tex.Cr.App.1981) (quoting Fifth Circuit precedent for the proposition that facts "established in the first trial may not be used in the second trial either as ultimate or as evidentiary facts"); *Neaves v. State*, 767 S.W.2d

ond, in at least one recent case this Court has explicitly held that "collateral estoppel" applied to bar the State from relitigating a fact that was not an essential element in either prosecution.

The petitioner in *Ex parte Watkins* killed his wife and shot her lover.[29] The State first tried him for the murder of his wife. The jury found him guilty, but during the punishment phase determined that he had acted "under the immediate influence of sudden passion arising from an adequate cause,"[30] and sentenced him to ten years' community supervision.[31] The State then indicted him for the attempted capital murder and attempted murder of his wife's lover. Watkins applied for a pre-trial writ of habeas corpus alleging that (1) ordinary double jeopardy barred the attempted-capital-murder prosecution, because the State had charged him with attempting to intentionally kill more than one person[32] and he already had been punished for the murder of his wife, and (2) "collateral estoppel" barred the State from relitigating the punishment-phase issue of whether he acted with sudden passion.[33] The Second Court of Appeals determined that ordinary double jeopardy was inapplicable, because the elements of attempted capital murder were distinct from the elements of murder charged in the first trial.[34] The Court of Appeals determined, however, that "collateral estoppel" did apply to bar the State from relitigating the punishment issue of sudden passion.[35] We granted review.

After noting the distinctions between double jeopardy and "collateral estoppel,"[36] we held that if a jury determines a punishment-phase special issue in the defendant's favor, "the doctrine of collateral estoppel bars the State from relitigating it in a second trial"[37] and affirmed the Court of Appeals.[38]

784, 786 (Tex.Cr.App.1989) (applying a rule from a New York state case that differentiated between situations where "res judicata" merely barred the relitigation of "facts or issues" decided in a prior case, and situations where it barred a subsequent prosecution).

29. 73 S.W.3d 264, 266 (Tex.Cr.App.2002).

30. *See* TEX. PENAL CODE § 19.02(d) (reducing murder to a second-degree felony if the factfinder, during the punishment phase, finds by a preponderance of the evidence that the defendant "caused the death [while] under the immediate influence of sudden passion arising from an adequate cause").

31. *Watkins*, 73 S.W.3d, at 267.

32. *See* TEX. PENAL CODE § 19.03(a)(7).

33. *Ex Parte Watkins*, 52 S.W.3d 858, 860–62 (Tex.App.-Fort Worth 2001), *aff'd* 73 S.W.3d 264 (Tex.Cr.App.2002).

34. *Id.*, at 862.

35. *Id.*, at 861 ("Thus, after the jury in Appellant's first trial determined that he acted in sudden passion, an ultimate issue on punish-ment, the State may not hale him before a new jury to relitigate that issue again." (international quotation omitted)).

36. *Watkins*, 73 S.W.3d, at 267–68.

37. *Id.*, at 269. I note that the Court in *Watkins* seems to have believed that the case before it was controlled by *Ashe*. *Id.*, at 268. While I believe that *Watkins* was correct in its collateral estoppel holding, as I have laid out above I do not believe it necessarily involved *Ashe* because the case was one of non-essential issue preclusion.

38. *Id.*, at 275. Under the rule announced today, *Watkins* was wrongly decided if it was indeed a double jeopardy case, as the Court says. The sudden-passion special issue in *Watkins* was a defensive special issue, not an essential element of the offense in either prosecution, thus application of the rule announced by the Court today would deny relief.

The jury question at issue in *Watkins* did not place the defendant in jeopardy, as that word is understood in Fifth Amendment jurisprudence, at either trial because the question could not have resulted in increased punish-

The circumstances of *Watkins* illustrate one good reason why this Court should not categorically eliminate the possibility of non-essential-issue preclusion: Our statutes present several situations where an issue decided by a factfinder during the punishment phase in one case could be an issue for the factfinder in a subsequent case.[39] Additionally, our exclusionary rule allows the jury to determine during the guilt phase whether it believes beyond a reasonable doubt that evidence was seized legally.[40] If these matters came up in a subsequent prosecution, they would normally not be essential elements of the offense,[41] and thus essential-issue preclusion would not bar their relitigation.

At a minimum, I believe that in these situations common-law issue preclusion should protect the integrity of the original factfinder's determination and bar relitigation in a subsequent prosecution.[42]

## V. The Limits of Double Jeopardy Protections

I disagree with the Court's treatment of *Ashe*'s limitations. By falling back to the "ultimate fact" language used in *Ashe* itself—but not in the Supreme Court's subsequent Fifth Amendment cases—the Court simply invites litigation about the definition of "ultimate fact."[43] I believe

---

ment. If answered in the affirmative, Watkins's punishment range would be reduced; if answered in the negative, his punishment range would remain the same as if the question had never been asked.

It is true, as the Court observes, that *Ashe* referred to collateral estoppel barring relitigation of an "issue of ultimate fact," not an "essential element." However, when *Ashe* used the phrase "issue of ultimate fact" it was describing the common-law rule of issue preclusion as applied by the federal courts. The degree to which *Ashe* constitutionalized that federal common-law rule is, logically, limited by the scope of the Fifth Amendment, which only protects defendants from being twice placed in jeopardy for the same offense. We should read *Ashe* as simply expanding the *application* of the Fifth Amendment to situations where the defendant is twice placed in jeopardy for the same element in two prosecutions. This interpretation more closely ties double-jeopardy-based issue preclusion to the ordinary, claim-preclusion effect of the double jeopardy clause, which only applies when all of the elements of two charged offenses overlap.

39. *See id.*, at 269 n. 14 (listing statutory special punishment-phase issues that can be given to jurors, including: finding a deadly-weapon was used, TEX. PENAL CODE § 12.35(c)(1); finding that an offense was committed because of bias or prejudice, TEX. PENAL CODE § 12.47(a); finding that murder was committed because of sudden passion, TEX. PENAL CODE 19.03(d); finding that kidnapper voluntarily released a victim in a safe

place, TEX. PENAL CODE § 20.04(d); finding that the defendant is the same person as that convicted in a prior case as set out in an enhancement paragraph, TEX. PENAL CODE § 12.42).

40. TEX.CODE CRIM. PROC. art. 38.23(a).

41. As I shall discuss shortly, under Supreme Court precedent any punishment-phase issue that could increase the maximum possible sentence, such as a finding that the offense was committed because of bias or prejudice, would be considered an element of the offense, and thus relitigation may be barred by essential-issue preclusion.

42. *Cf. Rollerson v. State*, 227 S.W.3d 718, 729–32 (Tex.Cr.App.2007) (where original factfinder found appellant used a deadly weapon in commission of burglary but court of appeals found evidence of deadly-weapon use legally insufficient, the State could relitigate the deadly-weapon question at a second trial because collateral estoppel protects determinations made by the original factfinder, not the appellate court).

43. The term "ultimate fact" is not self-defining, nor has its meaning always been consistent with what the Court believes it to mean. *See, e.g., Laughlin v. United States*, 344 F.2d 187, 191–92 (D.C.Cir.1965) (using as definition of "ultimate facts" as "those [facts] which the law makes the occasion for imposing its sanctions," and holding that a trial

that my approach, in which double-jeopardy-based issue preclusion follows the contours of the Supreme Court's double jeopardy jurisprudence, avoids these problems. An analysis of two cases, *Oppenheimer* and *Watkins*,[44] which arguably involve "ultimate facts" but certainly do not involve essential elements, shows the limits of where I believe double-jeopardy-based issue preclusion applies.

First, *Oppenheimer* itself stated that the Fifth Amendment's double jeopardy protections did not apply in that case.[45] *Oppenheimer* dealt with a second prosecution after the first prosecution was determined to be barred by the statute of limitations. Oppenheimer was therefore never in jeopardy in the first case; thus his second

prosecution was not a second jeopardy.[46] While the "acquittal" in *Oppenheimer* was "on the merits" of the case, the Supreme Court has since made clear that a judgment of acquittal that does not address issues of guilt or innocence does not necessarily bar an appeal or retrial.[47] The Supreme Court in *Ashe* used *Oppenheimer* to show that the federal courts applied common-law "collateral estoppel" in criminal cases, what it called "the federal rule," but because Oppenheimer was never in jeopardy during his first prosecution, and because the statute of limitations was not an element of the offense, *Oppenheimer* is not a case where double-jeopardy-based issue preclusion should apply.[48]

court's determination that certain evidence was inadmissible was an "ultimate fact" subject to issue preclusion in a second prosecution).

**44.** See Sections II and III, *supra*.

**45.** *See Oppenheimer*, 242 U.S., at 88, 37 S.Ct. 68 (the Fifth Amendment "has tended to give the impression that when it did not apply in terms, there was no other principle that could. But the 5th Amendment was not intended to do away with what in the civil law is a fundamental principle of justice," namely common-law *res judicata;* the Court then cited to *Jeter v. Hewitt*, 63 U.S. 352, 364, 22 How. 352, 16 L.Ed. 345 (1859), a civil case where the Court, as authorized by a Louisiana statute, applied common-law claim preclusion).

**46.** *Id.*, at 87, 37 S.Ct. 68 (accepting the prosecution's assertion that the case was one where "the defendant never has been in jeopardy in the sense of being before a jury upon the facts of the offense charged," which is the sense in which the Fifth Amendment recognizes jeopardy). For this reason, I ~~also~~ disagree with Judge Cochran's citation of *Oppenheimer* as a double jeopardy case.

**47.** *United States v. Scott*, 437 U.S. 82, 90–91, 98–99, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978); *see Kruelski v. Conn. Super. Ct. for the Judicial Dist. of Danbury*, 316 F.3d 103, 109–11 (2nd Cir.2003) (where trial judge dismissed case,

after jeopardy attached, on defendant's motion that prosecution was barred by the statute of limitations, prosecution's appeal and subsequent retrial was not barred by double jeopardy protections)

**48.** *Ashe*, 397 U.S., at 443–44, 90 S.Ct. 1189. Other cases seem to have uniformly viewed *Oppenheimer* as an example of collateral estoppel. At the risk of heterodoxy, I cannot agree with that analysis.

The motion that the *Oppenheimer* Court ruled on was a "plea in bar." A plea in bar was not an assertion of issue preclusion, but rather *claim* preclusion. *See* WRIGHT, MILLER & COOPER, *supra* note 5, at § 4402 (quoting Fifth Circuit case describing claim preclusion as being composed of the doctrines of bar and merger, and distinguishing claim preclusion and issue preclusion); CASAD & CLERMONT, *supra* note 3, at 82–85. Bolstering this observation is the fact that the Court referred to *"res judicata,"* which, while also an overarching term for the law of finality, has traditionally been used to refer specifically to claim preclusion. Additionally, *Oppenheimer* discussed the "judgment" of the first court, not its findings, and noted that "[a] plea to the statute of limitations is a plea to the merits"; this is more in line with claim preclusion analysis than issue preclusion analysis. Finally, I note that *Oppenheimer* was a second prosecution based on the exact same claim as a prior prosecution, yet Oppenheimer was never in

Second, in *Watkins*, we were ultimately ambivalent regarding whether double jeopardy reached the case at all,[49] but applied issue preclusion nonetheless. In determining whether double jeopardy applied to a fact determined during the punishment phase of a prior proceeding, *Watkins* discussed *Monge v. California*[50] and *Apprendi v. New Jersey.*[51]

In *Monge*, the Supreme Court held that double jeopardy did not apply to noncapital sentencing proceedings.[52] During the sentencing phase of Monge's state trial, the prosecutor sought to enhance Monge's sentence on the basis that Monge had previously been convicted of a violent crime.[53] The prosecutor presented evidence of a prior conviction and asserted that Monge had personally committed a violent act during the offense, but the evidence of the conviction did not contain details of the offense. The trial court found the allegation true and enhanced Monge's sentence accordingly. A state court of appeals overturned the enhancement for lack of evidence and ruled that double jeopardy barred the state from relitigating the issue on remand.[54] The Supreme Court held that because punishment-phase punishment enhancers, as a general rule, did not constitute elements of the offense, the punishment phase question

did not place Monge in jeopardy and thus relitigating it would not constitute double jeopardy.[55]

*Apprendi* involved a due process challenge to a New Jersey law that elevated the sentencing range if the trial judge found "by a preponderance of the evidence" that the offense was a hate crime.[56] The Supreme Court held, "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."[57] The Court arrived at this holding by determining that when a punishment-phase question increases the maximum possible sentence, that question is not a mere "sentencing factor," but is actually an element of an aggravated offense.[58]

We decided *Watkins* less than two years after *Apprendi*, when the continued validity of *Monge* was in question.[59] Nine years later, though, *Monge*'s core holding remains good law; as a general rule, questions decided during the punishment phase do not place the defendant in jeopardy. Combining *Monge* and *Apprendi*, the scope of double jeopardy protections during the punishment phase becomes clear: When a punishment-phase issue increases

jeopardy during the first prosecution. Upon close reading, it appears to me that *Oppenheimer* was a case neither of double jeopardy nor issue preclusion, but rather common-law claim preclusion.

49. *See Watkins*, 73 S.W.3d, at 274 ("this type of double jeopardy *or* collateral estoppel claim" (emphasis added)).

50. 524 U.S. 721, 118 S.Ct. 2246, 141 L.Ed.2d 615 (1998).

51. 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

52. *Monge*, 524 U.S., at 724, 118 S.Ct. 2246.

53. *Id.*, at 725, 118 S.Ct. 2246.

54. *Id.*, at 726, 118 S.Ct. 2246.

55. *Id.*, at 728–29, 118 S.Ct. 2246.

56. *Apprendi*, 530 U.S., at 468–69, 120 S.Ct. 2348.

57. *Id.*, at 490, 120 S.Ct. 2348.

58. *Id.*, at 494–95, 120 S.Ct. 2348.

59. *See, e.g., Watkins*, 73 S.W.3d, at 271 (*Apprendi* had "significantly curtailed" *Monge;* in *Apprendi*, "[t]he Court distanced itself from *Monge* ...").

the maximum possible punishment, that question is an element of the offense and its relitigation may be barred by double jeopardy,[60] but double jeopardy has no application to the relitigation of punishment issues that do not increase the maximum possible sentence.[61]

*Watkins* dealt with a punishment-phase question that could not have increased the defendant's maximum possible punishment. Simply put, it did not place Watkins in jeopardy of anything. Thus federal double jeopardy protections were inapplicable.

Because *Ashe*'s constitutional issue preclusion derives from the Fifth Amendment's prohibition on double jeopardy,[62] the first step to applying it accurately is to

analyze which situations implicate the Fifth Amendment at all. By not clearly noting the limits of *Ashe* in its opinion today, the Court may keep us from analyzing essential- and non-essential-issue preclusion claims under the correct law in future cases.

COCHRAN, J., filed a concurring opinion in which JOHNSON, J., joined.

I concur in the Court's judgment. I cannot join the majority opinion because I do not think that this case presents an issue of collateral estoppel.[1] Appellant relies solely upon the collateral estoppel doctrine embodied in the Double Jeopardy Clause of the United States Constitution as set out in *Ashe v. Swenson*.[2] That

---

**60.** *See United States v. Blanton*, 476 F.3d 767, 772–73 (9th Cir.2007) (*Apprendi* modified *Monge* such that double jeopardy barred the prosecution from appealing a trial court's finding that the prosecution had failed to prove a punishment enhancer beyond a reasonable doubt; since enhancer was an element of the offense, trial court's finding, even if based on erroneous legal interpretation, was an acquittal). *But see Rollerson v. State*, 227 S.W.3d 718, 730–32 (Tex.Cr.App.2007) (where appellant "concede[d] that relitigation of the deadly-weapon issue is not barred by double jeopardy," double jeopardy did not bar the State from relitigating a punishment enhancer that increased the maximum possible sentence on remand after appellate court determined there was insufficient evidence for trial court to have found punishment enhancer true; neither opinion nor briefs made mention of *Apprendi*).

**61.** *See United States v. Rosales*, 516 F.3d 749, 757–58 (9th Cir.), *cert. denied*, 553 U.S. 1095, 128 S.Ct. 2904, 171 L.Ed.2d 843 (2008) (double jeopardy did not bar prosecutor from appealing trial court's refusal to apply a sentencing enhancement that would have increased the *minimum* sentence imposed).

**62.** The Supreme Court has referred to *Ashe*-derived collateral estoppel as "[t]he collateral-estoppel effect attributed to the Double Jeopardy Clause." *Dixon*, 509 U.S., at 705, 113 S.Ct. 2849. I believe this is an accurate de-

scription. Where repeated prosecutions for the same offense elements are at issue, application of the double jeopardy clause will result in issue preclusion. In claims to which the double jeopardy clause does not apply, it will have no effect of any sort. Therefore, any issue preclusion in those cases will be an effect from applying a different doctrine.

**1.** If this case did raise a collateral estoppel issue, I would agree that our unanimous opinion in *Murphy v. State*, 239 S.W.3d 791 (Tex. Crim.App.2007), resolves the question of whether that doctrine applies in the context of a pretrial motion to suppress. As we held in *Murphy*, it does not.

**2.** 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). Specifically, appellant does not rely upon any federal common-law doctrine of issue preclusion or any common-law civil doctrine of issue preclusion as set out in the RESTATEMENT (SECOND) OF JUDGMENTS. Although the Supreme Court recently quoted from section 27 of the Restatement in *Bobby v. Bies*, —— U.S. ——, 129 S.Ct. 2145, 2152, 173 L.Ed.2d 1173 (2009), it did so in connection with rejecting a Double Jeopardy claim. In *Bies*, the Supreme Court held that "the doctrine of issue preclusion, recognized in *Ashe* to be 'embodied in' the Double Jeopardy Clause" did not bar the State from relitigating the question of the defendant's mental retardation even though the state supreme court

constitutional collateral-estoppel doctrine depends upon the resolution of specific,

ultimate historical facts in one proceeding that cannot be relitigated in a new proceeding.[3] Collateral estoppel involves Sgt.

had, in the direct appeal, found that the defendant had mild to borderline mental retardation. First, the defendant was not "twice placed in jeopardy" because he was convicted in the first trial, not acquitted. *Id.* at 2149. Second, that factual finding of mild mental retardation was not "essential" to the first judgement. *Id.* at 2152 ("If a judgment does not depend on a given determination, relitigation of that determination is not precluded."). Third, even if it had been essential, the type of issue preclusion the defendant sought would not be conclusive because the law had changed in the meantime. Fourth, Bies's case "does not involve an 'ultimate fact' of the kind our decision in *Ashe* addressed" and Bies was not acquitted in the first trial based on that specific fact. *Id.* at 2153. Fifth, even if the defendant could invoke the Restatement type of issue preclusion, the Court would not apply it in that case because the law had changed in the meantime. *Id.* ("Moreover, even if the core requirements for issue preclusion had been met, an exception to the doctrine's application would be warranted due to this Court's intervening decision in *Atkins* [*v. Virginia*, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002) ]."). But, of course, if the *Ashe v. Swenson* type of "ultimate factual finding" collateral estoppel under the Double Jeopardy Clause *did* apply, then that fact could not be relitigated even if the law had changed. The Double Jeopardy Clause would forbid it.

Because appellant invoked only the collateral-estoppel doctrine set out in *Ashe v. Swenson*, we need not address common-law or Restatement issue-preclusion doctrines. Those non-constitutional, common-law civil doctrines are frequently held to be inapplicable in criminal cases because "more fundamental concerns here are the enforcement of criminal laws designed to protect communities, and the public interest in the prosecution of crimes against persons. If these concerns are to be considered, collateral estoppel 'cannot be applied [to criminal cases] in quite the same way as civil cases.'" *United States v. McMillian*, 898 A.2d 922, 935 (D.C.2006) (quoting *New York v. Plevy*, 52 N.Y.2d 58, 436 N.Y.S.2d 224, 417 N.E.2d 518, 521 (1980)); *see also New York v. Hilton*, 95 N.Y.2d 950, 722 N.Y.S.2d 461, 745 N.E.2d 381, 382

(2000) (collateral estoppel principles "are not to be liberally applied in criminal cases"); *Pinkney v. Keane*, 920 F.2d 1090, 1096 (2d Cir.1990) (noting that "collateral estoppel is less liberally applied in criminal cases than in civil actions, because 'considerations peculiar to the criminal process may outweigh the need to avoid repetitive litigation'"). As the Supreme Court has explained in rejecting the application of nonmutual collateral estoppel,
 "[T]he purpose of a criminal court is ... to vindicate the public interest in the enforcement of the criminal law while at the same time safe-guarding the rights of the individual defendant. The public interest in the accuracy and justice of criminal results is greater than the concern for judicial economy professed in civil cases and we are thus inclined to reject, at least as a general matter, a rule that would spread the effect of an erroneous acquittal to all those who participated in a particular criminal transaction."
*Standefer v. United States*, 447 U.S. 10, 25, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980) (quoting *United States v. Standefer*, 610 F.2d 1076, 1093 (3d Cir.1979) (en banc)).

3. *See Ashe v. Swenson*, 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) (collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit"). In *Ashe*, the prosecution charged that the defendant was one of several men who had robbed a group of six poker players. After Ashe was tried and acquitted of robbing one of the players, the state tried him for robbing a different player. The second prosecution, based on "substantially stronger" testimony from "witnesses [who] were for the most part the same," resulted in a conviction. *Id.* at 439–40, 90 S.Ct. 1189. The Supreme Court concluded that the second prosecution was constitutionally prohibited. Because the "single rationally conceivable issue in dispute before the jury" at the first trial was whether Ashe was one of the robbers, the Court held that the jury's acquittal collaterally estopped the State from trying Ashe for robbing a different player during the same criminal episode. *Id.* at 445, 90 S.Ct. 1189. That is, the historical "fact" that the

Friday facts—the "who, why, where, when, what" facts of a case.[4] Here, the trial judge in the county court case simply made an erroneous legal ruling. That ruling ended the first case, and double jeopardy prevents any retrial of the failure-to-identify charge.[5] But that erroneous legal ruling does not prevent the State from prosecuting appellant for a different offense—possession of methamphetamine—that arose out of the same incident.

The county court judge, in the middle of appellant's trial on the failure-to-identify charge, entered a directed verdict against the State. He explained his rationale to the jury:

> [The officer] was outside his jurisdiction, stopped to investigate what was going on. I don't think there's anything wrong with that. But with him being outside his jurisdiction and him not testifying to any articulable facts as to how he thinks an offense might have been committed, I think the law requires me to grant the motion to suppress, which means y'all have no evidence in front of you.

The trial judge was wrong about the law, but he necessarily decided two historical facts:

1. Officer Johnson—a patrol officer for the City of Bullard—was outside the Bullard city limits when he saw appellant's car;

2. Officer Johnson did not testify to any facts about a specific offense that he thought appellant had committed at the time that he detained appellant.

No one wants to relitigate those facts. Everyone agrees with those facts. The evidence at both the county-court and district-court suppression hearings was the same concerning those two facts. The

---

defendant was not one of the robbers had already been decided. It could not be relitigated because "whatever else th[e] constitutional guarantee [against double jeopardy] may embrace, it surely protects a man who has been acquitted from having to 'run the gantlet' a second time." *Id.* at 445–46, 90 S.Ct. 1189 (citations omitted).

4. An ultimate fact issue to which collateral estoppel theoretically could apply in this case would be that appellant was not the person in the parked car. Other historical facts to which collateral estoppel would apply would include: in a DWI acquittal followed by an intoxication manslaughter prosecution, an essential finding that the defendant was not intoxicated. *See Simon v. Commonwealth*, 220 Va. 412, 258 S.E.2d 567, 572–73 (1979) (defendant who was acquitted of DWI could be later prosecuted for reckless manslaughter but government could not introduce evidence that he was intoxicated at the time of accident, although it could introduce evidence that he had been drinking).

5. *See Arizona v. Washington*, 434 U.S. 497, 503, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978) ("The constitutional protection against double jeopardy unequivocally prohibits a second trial following an acquittal. The public interest in the finality of criminal judgments is so strong that an acquitted defendant may not be retried even though 'the acquittal was based upon an egregiously erroneous foundation.' If the innocence of the accused has been confirmed by a final judgment, the Constitution conclusively presumes that a second trial would be unfair.") (citation omitted); *Fong Foo v. United States*, 369 U.S. 141, 143, 82 S.Ct. 671, 7 L.Ed.2d 629 (1962) (even though the acquittal verdict may be based "upon an egregiously erroneous foundation," the verdict is final, and the defendant cannot be retried for the same offense without violating double jeopardy); *see also United States v. Oppenheimer*, 242 U.S. 85, 87, 37 S.Ct. 68, 61 L.Ed. 161 (1916) (defendant whose conspiracy indictment had been dismissed with prejudice because of a perceived statute of limitations bar could not be reprosecuted for the same conspiracy offense after it was discovered that limitations did not, in fact, bar prosecution; "It cannot be that a judgment of acquittal on the ground of the statute of limitations is less a protection against a second trial than a judgment upon the ground of innocence").

problem arose with how the county court judge treated those facts. He misapplied the law to those historical facts.

First, he misunderstood the law that allows a police officer to arrest someone when the officer is outside his jurisdiction. Under Article 14.03(d),[6] a police officer has the authority to temporarily detain or arrest for any felony or breach of the peace offense, such as DWI or public intoxication, that is committed within his presence or view.[7] Further, under Article 14.03(g)(2),[8] Officer Johnson had statewide authority to detain or arrest for any non-traffic offense and county-wide jurisdiction to detain or arrest for any traffic offense committed in his presence or view.

So the historical fact that Officer Johnson was outside of the city limits of Bullard and technically outside of his jurisdiction was legally irrelevant to any issue for purposes of a motion to suppress in both the failure-to-identify and the possession-of-methamphetamine cases. The Code of Criminal Procedure gives him jurisdiction within Smith County (where the offense occurred) to detain or arrest for any offense. The county court judge made a legal error in giving any significance to the fact that Officer Johnson was "outside his jurisdiction."

The second historical fact that the county court judge found was that Officer Johnson did not testify that he had seen appellant actually commit any specific offense before he initially approached his car—a car with a running engine and headlights pointed toward the closed building at 3:00 a.m.—and woke him up.[9]

6. Tex.Code Crim. Proc. art. 14.03(d). That provision reads as follows:
A peace officer who is outside his jurisdiction may arrest, without warrant, a person who commits an offense within the officer's presence or view, if the offense is a felony, a violation of Chapter 42 or 49, Penal Code, or a breach of the peace. A peace officer making an arrest under this subsection shall, as soon as practicable after making the arrest, notify a law enforcement agency having jurisdiction where the arrest was made. The law enforcement agency shall then take custody of the person committing the offense and take the person before a magistrate in compliance with Article 14.06 of this code.

7. See Brother v. State, 166 S.W.3d 255, 260 (Tex.Crim.App.2005) (city police officer who had articulable suspicion to believe that defendant was driving while intoxicated could detain him outside of his city limits).

8. Tex.Code Crim. Proc. art. 14.03(g)(2). That provision reads as follows:
A peace officer listed in Subdivision (3), Article 2.12, who is licensed under Chapter 1701, Occupations Code, and is outside of the officer's jurisdiction may arrest without a warrant a person who commits any offense within the officer's presence or view, except that an officer described in this subdivision who is outside of that officer's jurisdiction may arrest a person for a violation of Subtitle C, Title 7, Transportation Code, only if the offense is committed in the county or counties in which the municipality employing the peace officer is located. Article 2.12(3) of the same Code states that peace officers include "marshals or police officers of an incorporated city, town, or village."

9. The evidence showed that Officer Johnson saw a car parked partially on the sidewalk next to a gas station with its engine running and its headlights on at 3:00 a.m. in the morning. Officer Johnson had personally assisted in a burglary investigation at this gas station on a prior occasion and he knew that there had been several other burglaries at this business. He therefore stopped to investigate the suspicious circumstances. The testimony at the failure-to-identify trial that the county court judge relied upon was as follows:
Q: You've stated in your report that you observed my client, Mr. York, for a couple of minutes before you woke him up; is that accurate?
A: Yes.
Q: Would you say that in those couple of minutes, you were able to determine that there was not a burglary at that location going on?

Again, there is no dispute that this is true. Again, it is not a legally dispositive fact. What mattered was whether Officer Johnson had reasonable suspicion to think that appellant had committed, was committing, or was about to commit some criminal offense, *any* offense, at the time he detained him by asking him to step out of the car.[10] The county court judge was mistaken about the law when he stated that Officer Johnson had to view a specific criminal offense before he could *detain* appellant and investigate the suspicious circumstances.[11] What matters, for purposes of Article 14.03, is that, at the time Officer Johnson *arrested* appellant, he had probable cause to believe that appellant possessed a controlled substance, in this case both marijuana and methamphetamine. And there is no dispute about that legal conclusion.

In sum, collateral estoppel, under the Double Jeopardy Clause, applies to the relitigation of historical facts that were necessarily decided against the State in the first proceeding. The State did not relitigate any ultimate historical facts that the county court judge found determinative. The county court judge's entry of an acquittal in the failure-to-identify trial was the result of a mistake of law, not a finding of historical fact. Therefore, double jeopardy prevented any retrial of that specific charge,[12] but it did not affect the district court judge's authority to apply the law correctly to those same historical facts in a different proceeding.

I therefore concur in the Court's judgment.

A: Well, I couldn't say that there was one occurring at that time, yes.

Q: Okay. And you didn't see any kind of property or anything in the car, did you?

A: Not from standing outside, no.

Q: Nothing that would give you reason to believe that he had burglarized that store?

. . .

Q: Okay. Officer, at that time, when you asked for consent to search and continued your investigation, Mr. York hadn't committed any type [of] felony offense within your view at that time, had he?

A: No, he had not.

Q: He had not committed any type of offense that would be a breach of the peace; is that correct?

A: No he had not.

Q: He hadn't committed any type of public order crime, such as a riot or something to that effect?

A: No, he had not.

10. *See Derichsweiler v. State,* —— S.W.3d ——, ——–––——, 2011 WL 255299, (Tex.Crim.App. 2011) ("A police officer has reasonable suspicion to detain if he has specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude that the person detained is, has been, or soon will be engaged in criminal activity," but officer need not specify a particular offense that he believes has been, is, or will be committed; "it is not a *sine qua non* of reasonable suspicion that a detaining officer be able to pinpoint a particular penal infraction" at the time he makes a temporary detention).

11. *Id.*

12. *United States v. Oppenheimer,* 242 U.S. 85, 87, 37 S.Ct. 68, 61 L.Ed. 161 (1916).