ACCEPTED
01-14-00807-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
3/30/2015 8:17:28 AM
CHRISTOPHER PRINE
CLERK

## APPELLATE COURT NO. 01-14-00807-CR

## IN THE COURT OF APPEALS FOR THE FIRST JUDICIAL DISTRICT

## OF THE STATE OF TEXAS

## AT HOUSTON

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
3/30/2015 8:17:28 AM
CHRISTOPHER A. PRINE
Clerk

**ALLISON LEIGH CAMPBELL,**

                 Appellant

**vs.**

**THE STATE OF TEXAS,**

                 Appellee.

_____

**TRIAL CAUSE NO. 1923909**
**FROM HARRIS COUNTY CRIMINAL**
**COURT AT LAW NO. 12**

**Honorable ROBIN BROWN, Presiding**

_____

## APPELLANT'S RESPONSE TO APPELLEE'S BRIEF

_____

**PAUL MEWIS**
**ATTORNEY FOR APPELLANT**
**4202 Windy Chase Lane**
**Katy, Texas 77494-1071**
**281.392.2306 (telephone)**
**281.392.7203 (facsimile)**
**STATE BAR NO. 13986500**

**ORAL ARGUMENT IS REQUESTED**

## <u>IDENTIFICATION OF THE PARTIES</u>

A complete list of the names of all interested parties is provided below:

Counsel for the State:

      DEVON ANDERSON – District Attorney of Harris County

      KIMBERLY APERAUCH STELTER – Assistant District
      Attorney on appeal
      Appellate Division
      Harris County District Attorney's Office
      1201 Franklin, Suite 600
      Houston, Texas 77002-1923

Appellant or criminal defendant:

      ALLISON LEIGH CAMPBELL

Counsel for Appellant:

      PAUL MEWIS, Attorney
      Texas Bar Card No. 13986500
      4202 Windy Chase Lane
      Katy, Texas 77494-1071
      713.857.7003 (cell)
      281.392.2306 (office)
      281.392.7203 (facsimile)
      paul@mewislaw.com (e-mail)

Trial Judge:

      HON. ROBIN BROWN – Presiding Judge

## TABLE OF CONTENTS

**Page**

**IDENTIFICATION OF THE PARTIES** . . . . . . . . . . . . . . . . . . . . . . .**-ii-**

**INDEX OF AUTHORITIES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**-iv-**

**RESPONSE TO APPELLEE'S ARGUMENTS** . . . . . . . . . . . . . . . . . . . . .**-2-**

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**-21-**

**CERTIFICATE OF SERVICE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**-22-**

iii

# INDEX OF AUTHORITIES

**Cases**                                                                    **Page**

*Boykin v. State*,
  818 S.W.2d 782 (Tex.Crim.App. 1991)...............-18-

*Brenan v. State*,
  140 S.W.3d 779 (Tex.App.--Houston [14[th] Dist.]
  2004, pet ref'd).............................-2-, -3-

*Cashin v. State*,
  Nos. 14-03-01140-CR, 14-03-1141-CR, 2005
  WL 975663(Tex.App.--Houston [14[th] Dist.]
  Apr. 28, 2005, no pet.)(mem. op., not
  designated for publication)......................-16-

*Davis v. State*,
  947 S.W.2d 240 (Tex.Crim.App. 1997)..............-19-

*Kothe v. State*,
  152 S.W.3d 54 (Tex.Crim.App. 2004)...............-19-

*Lauderback v. State*,
  789 S.W.2d 343 (Tex.App.--Fort Worth 1990,
  pet ref'd)......................................-16-

*Morrison v. State*,
  71 S.W.3d 821 (Tex.App.--Corpus Christi
  [13[th] Dist.] 2002) .............................-17-

*Ohio v. Robinette*,
  519 U.S. 33 (1996)...............................-19-

*Windham v. State*,
  No. 14-07-00193-CR, 2008 WL 2169918
  (Tex.App.--Houston [14[th] Dist.] May 22, 2008,
  pet ref'd)......................................-16-

# INDEX OF AUTHORITIES

**CASES:**                                                               **PAGE**


*York v. State*,
  342 S.W.3d 528 (Tex.Crim.App. 2011)...............-18-


**AMENDMENTS:**

FOURTH AMENDMENT .....................................-19-


**TREATSIES:**

*6 Michael B. Charlton*,
  Texas Practice: Texas Criminal Law 24.4 (1994)....-17-


**STATUTES:**

TEX.PENAL CODE, Section 6.03 .........................-11-

TEX.PENAL CODE, Section 42.03 ........-9-, -10-, -11-, -13-

TEX.PENAL CODE, Section 42.03(b) .....................-10-

APPELLATE COURT NO. 01-14-00807-CR

IN THE COURT OF APPEALS FOR THE FIRST JUDICIAL DISTRICT

OF THE STATE OF TEXAS

AT HOUSTON


ALLISON LEIGH CAMPBELL,

                              Appellant

vs.

THE STATE OF TEXAS,

                    Appellee.
_____

TRIAL CAUSE NO. 1923909
FROM HARRIS COUNTY CRIMINAL
COURT AT LAW NO. 12

Honorable ROBIN BROWN, Presiding
_____


APPELLANT'S RESPONSE TO APPELLEE'S BRIEF
_____

TO THE HONORABLE JUSTICES OF THE FIRST COURT OF APPEALS:

Comes now ALLISON LEIGH CAMPBELL, hereinafter referred to as the Appellant, and submits this Brief in Response to Appellee's Brief, filed on March 11, 2015, with the

- 1 -

Clerk of the Court of Appeals for the First Judicial District of the State of Texas, at Houston.

### RESPONSE TO APPELLEE'S ARGUMENT

#### I.

The Appellee, in its Brief herein, begins its arguments with the following: "Appellant has failed to present any issue for review regarding the trial court's overruling of her motion to suppress because she has not established what, if any, evidence was obtained as a result of Officer Pena's action."

The State relies on *Brennan v. State*, 140 S.W.3d 779 (Tex.App. – Houston [14th Dist.] 2004, pet ref'd):

> holding global request to suppress 'all evidence seized or obtained' from alleged illegal searches and failure 'to identify what, if any, evidence was ruled upon by the denial' presented nothing for appellate review.

What Appellee conveniently leaves out of its Brief is the portion of the *Brennan* opinion which states:

> Appellant's motion for rehearing asserts for the first time that the fruits of the illegal seizure are obvious and can easily and

unmistakably be ascertained by reviewing the record. It identifies, for the first time, several examples of such items from the reporter's record of the hearing. However, to have identified these fruits from what is provided in appellant's brief, as he now proposes, would have required this court to: (1) assume that evidence appellant sought to suppress had even been admitted into evidence at the hearing, which it was not required to be; (2) search the 50 page reporter's record of the hearing and apply applicable law to it to determine which items might arguably have been such fruits; and then (3) assume that appellant would have done likewise. On the contrary, our role is merely to evaluate the grounds of error presented by the appellant, not to develop them for him.

Since the Justices in the *Brennan* case believe it is not their role to develop "grounds of appeal for appellant", Appellant will, in this response brief, identify the fruits of the illegal detention and subsequent arrest, as they appeared in the trial court transcript of the hearing.

First, Appellant refers this Court to Pages 3-20 of Appellant's Brief. In the "Statement of Facts" in Appellant's Brief, Appellant clearly lays out the exact testimony from the hearing, as it regards the officer's

actions.    These actions led to the officer's observations and beliefs that could later be recited in a trial as evidence, in the form of oral testimony supporting a conviction for D.W.I.    Appellant pled guilty once her Motion to Suppress was overruled.

It is clear, up and through Page 5 of Appellant's Brief, that the officer's actions in approaching a parked car to awaken sleeping occupants was a "casual encounter", not requiring any reasonable suspicion of criminal activity or probable cause of a crime.    But, the testimony on Page 6 of Appellant's Brief clearly indicates the initial casual encounter escalated into a detention, once the officer demanded, received and kept Appellant's Texas driver's license.

Appellant, on Pages 24-30 of her Brief, fully discusses and provides the Court with ample case law to back-up her argument.    When the officer demanded, obtained and never returned her Texas driver's license, Appellant was illegally detained.

This detention required reasonable suspicion and, per the "fruits of the poisonous tree doctrine", all subsequent observations and actions (including field sobriety tests and statements by the Appellant and officers, are fruits of the initial detention. Specifically, see the Statement of Facts, on Pages 8-10 of Appellant's Brief.

These are the fruits of the illegal detention that were being presented to the Trial Judge to be suppressed, i.e., all the officer's testimony as to what he observed Appellant do once he returned to her car. See (*Page 17, Lines 12-18, Reporter's Record*):

Defense Atty.: So at this point in time, you pull your personal car next to her driver's door and get out?

Officer: That's correct.

Defense Atty.: And your purpose was to?

Officer: Basically try to help her out, either getting a ride home or at that point I determined that she was possibly intoxicated. . .

The fact that the officer still had Appellant's Texas driver's license in his possession, the "smell of alcohol", Appellant "cussing at him" and Appellant's accusation of the officer harassing her are all fruits of this illegal detention.  At some point, the Appellant got out of her vehicle and she goes to the ground after the officer places his hand on her.  The officer handcuffs Appellant and calls for back-up to continue his investigation.

Most important is the testimony by the officer admitting he did not see Appellant drive.  Rather, the officer said she was behind the wheel of a car that was in "park", with the motor running *(Page 13, Lines 7-25, Reporter's Record)*:

DEFENSE ATTY.:    And when you first saw my client's car that you got her out of, was she parked, stopped?

OFFICER:    At that point, when she's in front of me — like, I don't remember if the car was in gear or parked, so I'm going to say if the car didn't roll when I started talking to her,

|  |  |
|---|---|
| | I'm going to say the vehicle was parked. |
| Defense Atty.: | Did you see my client drive up to the Taco Cabana before you arrived that night? |
| Officer: | No, sir, I didn't. |
| Defense Atty.: | When is the first time you saw my client's car? |
| Officer: | When I pulled up to place my order right behind her car. |
| Defense Atty.: | So you were sitting parallel to the order board in the closest lane to the building, correct? |
| Officer: | That's correct. It is like a little turn there. So she was already off the turn and I was in the turn. |
| Defense Atty.: | So you didn't at that time see her drive or operate that motor vehicle, did you? |
| Officer: | That's correct. |

Appellant testified that she had not driven the car, but another male had driven and received a call and had to leave *(Page 26, Lines 22-25, Reporter's Record)*:

|  |  |
|---|---|
| Prosecutor: | Did you drive to the Taco Cabana location? |

```
Appellant:          I did not.

Prosecutor:         Who drove?

Appellant:          Two males were with us. . .
```

As a direct result of the officer's seizure of Appellant's Texas driver's license and his demand that she relocate her vehicle, this enabled the officer to supply the missing D.W.I. element of "drive and operate a motor vehicle".  The observation of her driving her vehicle is a fruit of the illegal detention.

Additionally, all actions, observations and field sobriety tests by the assisting officer would be tainted by the initial illegal detention.  Thus, these elements would be suppressed under the fruits of the poisonous tree doctrine.

## II.

Next, Appellant attempts to justify Appellant's detention, i.e., asking for her Texas driver's license on the theory that the officer was conducting an investigative detention for obstructing a passageway and/or public intoxication.

This Court should base its decision on the officer's testimony and not the personal opinion of the Appellee. In this context, the Appellee wants this Court to hold the drive-thru lane to be a "passageway" covered by Section 42.03 of the Texas Penal Code. Please note the officer's testimony during the trial court's hearing *(Page 18, Lines 19-25 & Page 19, Line 1 of the Reporter's Record)*:

> Prosecutor:  The Taco Cabana drive-thru, I want to take you back to that. Would you describe it as a passageway, perhaps?
>
> Officer:  I can't recall it as a passageway. Most drive-thru(s) have one lane that curves around. You order at the board and come back up to the drive-thru window. There are several that are two lanes, but I don't recall if that was a two-lane.

Even the officer didn't consider the drive-thru a passageway!

Note, also, the officer's statement regarding one or two lane drive-thru(s) make it clear that if it were two lanes, he wouldn't consider it a passageway!

The prosecutor goes on to press the officer in an effort to transform the drive-thru into one of the specific passageways covered by Section 42.03 of the Texas Penal Code. The prosecutor was able to get the officer to verify that the drive-thru system had both an entrance and exit, neither of which Appellant blocked. Rather, he testified that Appellant blocked a path between the two.

But, again, since ignorance of the law is not an excuse or defense in Texas, the officer should have been familiar with Section 42.03(b), Texas Penal Code. This Article pertains to the definition of "obstruct", which means to render impassable or to render passage unreasonable inconvenient or hazardous.

The officer was asked these questions directly and denied either existed!

The Legislature, also, clarifies Section 42.03, Texas Penal Code, by beginning with:

(a) A person commits an offense if without legal privilege or authority. . .

Clearly, Taco Cabana expected its customers to be able to stop as they proceeded from the entrance to the exit of the drive-thru(s) to place an order and to wait in line as other cars stopped enroute to this pick-up window.

Section 42.03 of The Texas Penal Code, also makes it a crime if Appellant refused to move her vehicle, if asked by the officer. In this case, once the officer ordered Appellant to move her vehicle, she complied and then parked it. Thus, no offense occurred.

### III.

Finally, Texas law only criminalized conscious acts as crimes. See Section 6.03 of the Texas Penal Code Annotated: "Definitions of Culpable Mental States".

Intentional requires a "conscious" objective or desire to engage in the conduct or cause the result.

Knowingly requires a person to be "aware" of the nature of his conduct or that circumstances exist.

Recklessly requires a person to be "aware" of but "consciously" disregard a substantial and unjustifiable

- 11 -

risk that the circumstances exist or the result will occur. Appellant apparently fell asleep while waiting in line and could not have been "conscious" or "aware", as the law requires.

In analyzing the facts and law of this case, one is attempting to determine what facts the officer had at the time he seized Appellant's Texas driver's license (i.e., detained her).

In many cases, an officer begins a casual encounter and, upon investigation, he learns new facts that may provide a reasonable suspicion to detain. Upon further investigation during the detention, he may even learn new facts sufficient for probable cause to arrest. However, in this case, rather than learning new facts indicating criminal activity, all facts learned by the officer tend to dispel any belief a crime had been or was being committed.

The officer, upon his arrival at Appellant's door of her vehicle, could clearly see the appellant was asleep.

Thus, proving that she was not intentionally, knowingly or recklessly obstructing the drive-thru.

Secondly, the officer candidly admitted he could have safely and without any "<u>unreasonable</u>" inconvenience drive around Appellant, meaning there was no obstruction at all as defined by Section 42.03, Texas Penal Code. The Legislature chose not to outlaw all obstructions that made passage "inconvenient", but only those that made passage "unreasonably inconvenient".

Thus, the seizure and retention of Appellant's Texas driver's license, at this point, was not supported by a reasonable suspicion.

Also note that in Texas, the Courts have allowed for an officer making a traffic stop to ask for one's Texas driver's license. This is for the purpose of checking for open warrants. However, also note that this officer was off-duty, working an extra security job at a neighboring Walmart when he decided to get breakfast in his personal car. He testified that he did not have the

ability to run a registration check (*Page 9, Lines 12-15, Reporter's Record*).

### IV.

As for the Appellee's second contention that the officer was conducting a public intoxication investigation, again, please base your decision on the facts testified to by the officer in the hearing. The officer clearly stated he smelled no alcohol upon the initial encounter and that he had no hesitation in asking Appellant to drive the car some "500 feet" and park and wait for him:

> Officer: … and I asked her for her driver's license. At that point she gave me a driver's license and I told her to take a parking space that was about five hundred feet from our location (*Page 8, Lines 23-25 & Page 9, Line 1, Reporter's Record*).

> Officer: She was – she looked tired. She was sleepy. At that point I did not smell any alcohol. That's why I made the decision to let her drive to the parking space.
>
> . . .

Prosecutor: When she drove off, how far away did she drive?

Officer: Approximately 500 feet from the location she was at, to the parking space. *(Page 9, Lines 4-11, Reporter's Record).*

Prosecutor: What did you do with the license?

Officer: I placed it in my pocket and I instructed her verbally to park at one of the parking locations about 500 feet from our location.

Prosecutor: And then I take it you shut the door so she could comply with your order to move to another location?

Officer: That is correct. *(Page 16, Lines 5-11, Reporter's Record)*.

This clearly shows that the officer had no facts to support a reasonable belief of either public intoxication or D.W.I.

Five hundred (500) feet? That is 166 yards! In fact, I used Google Earth to find a point 500 feet from this Court's Courthouse. That would be (going North on San Jacinto) the Criminal Courthouse; (going West on Congress) at the Metro Rail; (going South on Fannin) the

front door of Sam Houston Hotel; and (going East on Preston) at the Civil Courthouse. The Court can take judicial knowledge of these distances. Note, also, it is 500 feet from the Taco Cabana drive-thru to the front door of the officer's extra job at Walmart!

Allowing Appellant to drive unescorted for such a distance clearly shows no reasonable suspicion on the part of the officer that she was either publicly intoxicated or D.W.I.!

The State cites three (3) Texas cases, two (2) of which are unpublished opinions, supporting its argument that even the brief blocking of a passageway was a crime. These three cases are as follows: *Lauderback v. State*, 789 S.W.2d 343 (Tex.App.—Fort Worth 1990, pet ref'd); *Windham v. State*, No. 14-07-00193-CR, 2008 WL 2169918 (Tex. App. – Houston [14th Dist.] May 22, 2008, pet ref'd); and *Cashin v. State*, Nos. 14-03-01140-CR, 14-03-1141-CR, 2005 WL 975663 (Tex.App. – Houston [14th Dist.] Apr. 28, 2005, no pet.)(mem. Op., not designated for publication). However, it fails to point out that

all three of these cases involve the accused having stopped on a highway. The Courts found such an act "hazardous", due to the sheer nature of a highway being for travel at rates of speed from 30 – 75 m.p.h. and where users don't expect someone to stop in a moving lane.

Contrast this to a drive-thru lane where one is expected to repeatedly stop, place an order, and proceed (stop & go), as others pay for their orders (at rates under 5 m.p.h.). This hardly creates a hazard! See *Morrison v. State*, 71 S.W.3d 821 (Tex. App.—Corpus Christi [13[th] Dist.] 2002):

> While the instant vehicle was parked in the northbound lane of traffic, it was not obstructing southbound traffic and was passable by northbound motorists entering the southbound lane, passage was not unreasonably inconvenient because there was no traffic. As one scholar has commented, no violation of the statute is proven 'by evidence that shows the defendant only caused a slower passage or momentarily impeded progress.' 6 *Michael B. Charlton*, Texas Practice: Texas Criminal Law 24.4 (1994). Additionally, the vehicle did not, and indeed could not have created a hazardous condition because there were no children at play at the time the vehicle was stopped. To hold the vehicle obstructed a roadway under these

circumstances, would subject virtually every mail carrier and delivery person to prosecution on a daily basis. This would be an absurd result which we must avoid. *Boykin v. State*, 818 S.W.2d 782 (/case/boykin-v-state-6) (Tex.Crim.App. 1991). Accordingly, we hold the trial judge abused his discretion in denying appellant's motion to suppress on the basis that Golden observed a violation of Section 42.03 of the Texas Penal Code.

Additionally, while appellant drove-off, as ordered, the officer's main concern was to continue through the drive-thru window, pick-up and pay for his breakfast!

Appellee cites *York v. State*, 342 S.W.3d 528 (Tex.Crim.App. 2011), in which they justify a public intoxication investigation for one sleeping in a running car. But, the facts in *York* showed the vehicle was parked partially on a sidewalk and Defendant was confused about his location, the business was closed, which indicated the possibility of a burglary. These facts are far from falling asleep for two minutes in a drive-thru of an open business. Additionally, when the Appellant was awoken by an officer and ordered to move

her vehicle, she complied. Appellant displayed no confusion and was aware of her location.

Texas law has addressed the need to justify continual, prolonged detention. See *Kothe v. State*, 152 S.W.3d 54 (Tex.Crim.App. 2004):

> In deciding whether the scope of a Terry detention is "reasonable," the general rule is that an investigative stop can last no longer than necessary to effect the purpose of the stop. [32] In other words, if a driver is stopped on suspicion of driving while intoxicated, once the police officer determines that the driver is not impaired, he should be promptly released [33]. . .In the present case, the court of appeals agreed that 'a warrant check in the context of a traffic stop is generally viewed as a reasonable law enforcement exercise.' [38] However, citing *Davis v. State*, the court of appeals stated that a warrant check cannot be used solely as a means to extend a detention 'once the reasonable suspicion forming the basis for the stop has been dispelled.' [39] This is consistent with the rationale behind the Supreme Court's development of Fourth Amendment law. . .In *Ohio v. Robinette*, . . . once the original purpose for the stop is exhausted, police may not unnecessarily detain drivers solely in hopes of finding evidence of some other crime. . .Only if a license check 'unduly prolongs' the detention is the officer's action unreasonable under the circumstances. [43] In this case, the court of appeals thought that the order of events was crucial. It found that because Deputy Forslund did not initiate the

warrant check until after he had determined that Mr. Kothe was not intoxicated, the deputy impermissibly extended the detention[44]. . .

Once our officer was presented with the above facts (supporting no obstruction of a passageway, no use of alcohol, no signs of intoxication or danger to Appellant's self or another), Appellant should have been permitted to leave. However, she could not leave because the officer had seized and retained her Texas driver's license.

V.

Finally, the Appellee wants to argue the handcuffing of Appellant was only a detention and not an arrest requiring probable cause. What Appellee is ignoring is that the Appellant testified under oath, as follows:

Appellant:    He comes up and I feel he's aggressively speaking to me. I didn't even know why I'm really there. It is not being explained to me. He is talking to me. At one point – and then I do open the door. And I'm grabbed on the arm

right here. Immediately pulled out of the car and put on the ground. At which I'm asking what I've done. Because I don't know.

Defense Atty.: Did you get a response from this officer?

Appellant: No, I did not.

Defense Atty.: Were there any other officers present when he first grabbed your arm and put you on the ground?

Appellant: No, sir.

Defense Atty.: After he put you on the ground, did he handcuff you?

Appellant: He did. Shortly after I reached the ground, I was handcuffed.

Clearly, the officer, without probable cause, chose to arrest the Appellant.

## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, having considered the authorities and arguments presented herein, Appellant prays the Court to enter an order setting

aside the judgment and sentence in this matter for the reasons enumerated above.

RESPECTFULLY SUBMITTED,

*/s/ Paul Mewis*

PAUL MEWIS
Texas Bar Card No.13986500
4202 Windy Chase Lane
Katy, Texas 77494-1071
281.392.2306 (office)
713.857.7003 (cell)
281.392.7203 (facsimile)
paul@mewislaw.com (e-mail)
ATTORNEY FOR APPELLANT

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Appellant's Response to Appellee's Brief was hand delivered to the attention of Ms. Kimberly Aperauch Stelter, A.D.A., Appellate Division, Harris County D.A.'s Office, 1201 Franklin, Suite 600, Houston, Texas 77002-1923, on this the 31st day of March, 2015.

*/s/ Paul Mewis*

PAUL MEWIS

## <u>WORD COUNT CERTIFICATE OF COMPLIANCE</u>

I, PAUL MEWIS, the undersigned attorney for Appellant Allison Leigh Campbell, in Appellate Cause No. 01-14-00807-CR, certify that Appellant's Reply Brief contains 3,898 words. This Reply Brief is a computer-generated document created in Microsoft Word 2010, using Courier New 14 point font. I am relying on the word count provided by the software used to prepare the document.

*/s/ Paul Mewis*

**PAUL MEWIS**